JOEL BENSON, Appellant, *v.* STEWART and SANDFORD, Appellees.

1. LIMITATIONS: MORTGAGE BARRED BY.—The Statute of Limitations of 1844, applies to mortgages executed and forfeited before its passage; and in such cases the period of limitation commences running from the date of the act.

2. SAME.—The period of limitations which bars a bill in equity for the foreclosure of a mortgage on land, is that which bars the right of entry, or an action for the possession, viz., seven years.

3. SAME.—If the mortgagee file his bill in equity against the mortgagor, to foreclose a mortgage on land, within the period allowed by the Statute of Limitations, the bar of the statute is saved even as against a purchaser from the mortgagor, who is in possession, and who was not made a party to the suit, by an

VOL. I.—4

amended bill, until after the lapse of time prescribed by the statute; the commencement of the suit against the mortgagor being a sufficient assertion of the mortgagee's title, against the purchaser.

4. SAME : ADVERSE POSSESSIONS JOINED TOGETHER.—It is competent to join one adverse possession to another, in order to make the bar of the Statute of Limitations effectual, *provided* the possession be continued, uninterrupted, and adverse, during the whole period; but if there intervene a period of time, in which the possession is not adverse, the statute will ,only run from the commencement of the last adverse possession.

5. SAME : BETWEEN VENDOR AND VENDEE.—The possession of a vendee under a title bond, conditioned to make title upon payment of the purchase-money, is not adverse, but in subordination to the title of the vendor, and in such case the Statute of Limitations does not commence running against the vendor or his mortgagee, until a deed is made, or the purchase-money paid.

6. REGISTRATION : NOTICE.—The vendee of a mortgagor, after registration of the mortgage, is a purchaser with notice.

APPEAL from the District Chancery Court, at Holly Springs. Hon. Henry Dickinson, vice chancellor.

This cause was submitted in this court upon the following agreed abstract:—

On 27th September, 1850, Stewart and Sandford, trustees for Brown, Brothers & Co., and Hyde, Cleveland & Co., filed their bill in the District Chancery Court, at Holly Springs, against Thomas N. Niles, for the foreclosure of three mortgages, upon as many sections of land in the State of Mississippi, executed by said Niles to them, on 29th November, 1836, to secure the payment of certain debts due from him to Brown, Brothers & Co., and Hyde, Cleveland & Co.

Protracted litigation ensued between complainants and Niles, in the progress of which the fact was disclosed, that one section of the mortgaged land, to wit, section 36, in township 11, of range 5 east, in Pontotoc county, had been sold for taxes, and bought by one Augustus Jagger and by Jagger transferred to the appellant, James Benson. Thereupon, on the 10th January, 1853, Stewart and Sandford, trustees, &c., filed an amended bill against the said Benson, calling upon him to answer, and disclose fully the nature of his claim upon the said section of land.

James Benson, on 2d January, 1854, filed his answer to this amended bill, in which he sets up the tax title acquired by him,

from Jagger, by quitclaim deed from Jagger, to him, dated November 10th, 1847. He then proceeds to state, that about August, 1845, he bought from Thomas N. Niles, (the mortgagor,) the south half of said section 36, and gave Niles his notes for the purchase-money, and received a title-bond from Niles, under which he immediately went into possession, and that he has had actual possession of the said south half of said section, ever since. That he afterwards paid Niles the purchase-money; and on 24th September, 1849, procured Niles to make a deed, conveying the said south half to his son, Wm. M. Benson; and that on the 1st August, 1851, his said son conveyed said land to him.

That about the month of August, 1845, one William Rogers contracted with Niles for the north half of said section 36, gave his notes for the purchase-money, took a title-bond, and went into possession. That about the 4th October, 1850, said Rogers abandoned his said contract, and respondent (James Benson,) bought the said north half of said section from Niles, and took from Niles a deed therefor, and immediately went into, and has ever since held possession thereof.

That he purchased the whole section in good faith, without notice of the claim of complainants, and that he paid a valuable consideration, to wit, £1600 for the south half, and $750 for the north half.

He denies all fraud, and pleads and relies upon his adverse possession for seven years, before the filing of the amended bill.

. The proof, so far as material to this appeal, is, that on 12th April, 1837, Niles's mortgage to complainants on this section of land, was duly recorded in Pontotoc county.

That the deeds from Niles to Benson and his son, and from Jagger to Benson, and from Benson's son to him, were all executed as alleged, and that Benson paid the purchase-money to Niles; but there is no proof as to the time when he paid it.

That Benson has had actual possession of the south half of said section, since 1st September, 1845, and cultivated it, and made valuable improvements upon it.

That the land was sold as the property of T. N. Niles, for the

taxes of 1843, and was assessed as the property of Richard E. Orne.

There is no proof that the land ever did belong to Richard E. Orne.

The court below decreed a foreclosure of all the mortgages. This appeal is prosecuted by Benson alone.

*Miller* and *Kilpatrick*, for appellant.

A court of equity will not lend its aid to enforce a right, which has become stale from lapse of time.

In this case the mortgagees slept upon their rights for seventeen years; a length of time from which a presumption of payment might well arise.

Benson purchased without actual notice of the mortgage.

There is in the books great diversity of opinion as to what will constitute adverse possession, but there can be no doubt that Benson took possession in his own right, and against all the world.

He purchased the absolute title, and took actual possession— building houses and cultivating the soil.

The character of his possession was wholly inconsistent with the idea that he held in subordination to the claim of any other person.

As to the south half of section 36, it is not disputed that Benson had held actual possession, under his purchase, for more than seven years before the filing of the bill against him.

As to the north half, the possession of Rogers, and of Benson, who succeeded him, together, was for more than seven years before the filing of the bill.

Courts of equity will apply Statutes of Limitations by analogy, and if a party has failed to enforce his right until his remedy at law is barred, equity will not, ordinarily, afford him relief.

A right of action in this case accrued to appellees, if at all, at the time Benson took possession; and we insist that, having allowed more than seven years to elapse, they are barred in equity.

Under our statute of 1844, Hutch. Code, 829, real actions are barred, unless commenced within seven years after the right of action accrued.

It is not necessary that the possession should be technically adverse, in order to constitute a bar under the first and second sections of this act.

The possession was actual, and inconsistent with the idea of any right in appellees.

It is true, that Benson is presumed to have had notice of the mortgage recorded; but from the great lapse of time, he had a right to presume that the mortgage debt had been discharged.

It appears from the record, that appellees had taken from Niles an assignment of his interest in fifty sections of land, as a further security for the debt secured by the mortgage on the land in controversy; and this fact comes strongly in aid of the presumption of payment, arising from the lapse of time.

That portion of the answer which sets out the purchase from Niles—the title-bond and deeds—is strictly responsive to the bill, which calls for a full disclosure by Benson of the nature and character of his title and claim.

The possession of Benson was not the possession of Niles; but after the purchase, was held against Niles and all others. His possession was open, notorious, and of such a character, that all persons interested were bound to take notice of it.

It does not appear that Niles ever had actual possession of the land, and whether his possession may have been fiduciary or not, cannot affect the character of Benson's possession. As to the south half of the section, it is manifest that a right of action accrued to appellees, if at all, more than seven years before filing the bill against Benson.

The circumstances surrounding the case, present cogent reasons why the bar of the statute should be applied.

The appellees sleep upon their rights for seventeen years—permit the appellant to part with his money, to make valuable improvements, and to remain in peaceable possession for more than seven years, before they come into a court of equity—holding, all the while, other valuable security.

*Watson* and *Craft*, for appellees.

The agreed abstract filed in this cause, presents the facts out of which arise the only questions involved in this appeal.

On the hearing in the court below, the tax title acquired by Benson from Jagger, was not relied upon, and we presume that it will not be relied upon in this court. Indeed, under repeated recent decisions of this court, it is definitely settled, that the tax sale at which Jagger purchased was illegal, and his deed from the tax collector void. The land was assessed as the property of Richard E. Orne, who had no shadow of claim to it. Independent of this, the sale was a nullity, for several reasons, but this is decisive. *Jones* v. *Burford*, 4 Cush. 194; *Styles* v. *Weir*, 4 Ib. 187; *Craft* v. *Green*, not yet reported.

Benson claims, in his answer, that he is a *bonâ fide* purchaser, for valuable consideration, without notice of the claim or title of complainants.

He was not a purchaser without notice, for the mortgage from Niles to complainants was on record in Pontotoc county, and he was bound to take notice of it. *Baldwin et al.* v. *Jenkins et al.*, 1 Cush. 206–212; *Hoover* v. *Wheeler*, 1 Ib. 315; *Dean et al.* v. *De Segardi et al.*, 2 Ib. 426; *Dennistown* v. *Potts*, 4 Ib. 13.

*Bonâ fide* purchasers for valuable consideration, without notice, are those who are the purchasers of the legal title or estate, and a purchaser of a mere equitable estate is not embraced. *Wailes* v. *Cooper*, 2 Cush. 208–229.

The question is then simply one of the Statute of Limitations. Benson claims that he has been in actual adverse possession, for seven years before the filing of complainant's amended bill, to which he was made defendant.

It is evident that this plea can only relate to the south half of the section, since he admits in his answer, that he only bought and took possession of the north half in 1850; and the amended bill was filed in 1853.

Benson says he went into possession under a title-bond from Niles. There is no proof of the existence of this title-bond. The allegation of its existence is not responsive to the bill, and must be proved or disregarded. *Seifer* v. *Hoffman*, 4 Cush. 615; *Eastman et al.* v. *M'Calpin*, 1 Geo. R. 170.

But conceding the existence of the title-bond, Benson's posses-
sion was under Niles, and a naked possession is not *per se*, a bar
under the statute, when the beginning of the possession is permis-
sive; his possession was the possession of Niles.  *Spalding* v.
*Grigg*, 4 Geo. R. 75 ; *Day et al.* v. *Cochran*, 2 Cushm. 261-275.

Until the execution of the deed from Niles to Benson, or at
least until the payment of the purchase-money by Benson, the rela-
tion of landlord and tenant, or of *quasi* mortgagor and mortgagee,
existed between them, and Benson could not be heard to assert a
claim adverse to Niles.  *Champlin* v. *Dotson*, 13 S. & M. 559 ;
*Wildy* v. *Doe ex dem. Binney*, 4 Cushm. 40 ; *Bush* v. *Cooper*, 4
Ib. 599 ; *Hardeman* v. *Cowan*, 10 S. & M. 486.

Benson's possession being under Niles, was not adverse to com-
plainants, for Niles's possession, so far as he had any, was fiduciary,
and as trustee for complainants.  *Higgison* v. *Mein*, (4 Cranch.
419,) 2 Cond. R. 155 ; *Doe* v. *Jackson ex dem.*, 5 Cowen, 174 ;
*Morgan's Adm'r* v. *Morgan's Ex'r.*, 10 Geo. R. 297.

There was no adverse possession then as against complainants,
so long as the possession was fiduciary; and neither Niles nor
Benson could change the possession from fiduciary to adverse,
without giving notice to complainants of the intention to do so.
Prior to the record of the deed from Niles to Benson, there is no
proof of notice, actual or constructive, to complainants, of an ad-
verse holding; without such notice, the possession was not adverse.
*Lane's Lessee* v. *Orment*, 9 Yerg. 86 ; *Yarborough* v. *Newell*, 10
Ib. 376.

If the statute began to run in favor of Benson, only at the date
of Niles's deed, (24th Sept., 1849,) the bar is not complete.

But finally, Benson's possession never was adverse up to the
filing of complainants' amended bill.  Being a purchaser from a
trustee, with notice, he became trustee in the place of his vendor,
and assumed the same relation to complainants, as that which Niles
had occupied.  *Farmers Bank* v. *Douglass et al.*, 11 S. & M.
553, 554 ; 10 Grattan, 231.

And the taking of a deed from Niles, and placing it on record,
was not a disclaimer of the trust; for the presumption of law is,
that knowing the title of Niles, he only bargained for that title,

and held under it subject to complainants' prior lien. *Jackson, ex dem. Carson et al.* v. *Cains,* 20 Johns, 301; *Farmers Bank* v. *Douglass et al.,* 11 S. & M. 553, 554.

HANDY, C. J.—The facts necessary to be taken into view, in considering this case, are substantially as follows :—

The appellees filed their bill in the District Chancery Court, at Holly Springs, on the 27th September, 1850, to foreclose a mortgage executed by one Niles in the year 1836, to secure the payment of a promissory note, due 1st December, 1839, and conveying a tract of land lying in Pototoc county, which mortgage was duly registered. This bill was filed against Niles, the mortgagor, and afterwards, on the 10th January, 1853, an amended bill was filed making the appellant a party and calling upon him to disclose the nature of his claim upon the land. He answered, setting up a title to the entire tract, under a deed to him from one Jagger, dated 10th November, 1847, who had purchased it at a tax collector's sale. He further states, that in August, 1845, he purchased from Niles, the mortgagor, the south half of the section in controversy, gave Niles his notes for the purchase-money, and took a bond for title from him, and immediately went into possession, and has so continued; and that he afterwards paid Niles the purchase-money, and on 24th September, 1849, Niles executed the conveyance under which he claims. He further states, that about the month of August, 1845, one Rogers contracted with Niles to purchase the north half of the section, gave his notes for the purchase-money, received a bond for title, and went into possession, which contract was rescinded by Niles and Rogers, in October, 1850; and thereupon, that the appellant purchased that part of the land from Niles, received a deed, and took and still holds possession. He claims to hold the entire tract as a purchase for a valuable consideration, without notice of complainants' claim, relies upon his adverse possession of seven years before the filing of the amended bill against him, and pleads the Statute of Limitations as a bar to the enforcement of the mortgage. It is admitted that the deeds mentioned in the answer were executed at the times stated, that Benson took possession of the south half of the section in September,

1845, and that he paid the purchase-money to Niles; but it does not appear at what times the payments were made.

The vice chancellor decreed a foreclosure of the mortgage, and from that decree this appeal is taken.

The first point raised in behalf of the appellant which we will consider is, whether the enforcement of the mortgage is barred by the Statute of Limitations.

It appears that the note secured by the mortgage became due on the first day of December, 1839, and of course the right of foreclosure accrued at that time. The bill was filed in September, 1850, and this is less than twenty years after the forfeiture, if the case were governed by the rule which existed before the passage of the statute of 1844. But the rule of limitation applicable to it, is that fixed by the act of 1844, and the period of limitation that would bar the right of foreclosure, would be that which bars the right of entry, or an action for the recovery of possession of the lands fixed by that act, and which is seven years. And in this case the bill was filed against the mortgagor before the lapse of seven years from and after the passage of the act of 1844. This was a sufficient assertion of the mortgagee's right to prevent the mortgage from being barred by the statute, though the amended bill by which the appellant was made a party was not filed until after the lapse of seven years after the passage of the statute.

The next question which we will notice is, whether the appellant is entitled to the protection of the Statute of Limitations with respect to that part of the land alleged to have been sold to Rogers.

There cannot be any doubt upon this point. If Rogers had gone into possession and paid the purchase-money, or received a deed, and had subsequently conveyed the premises to Benson, and the time embraced by both possessions had amounted to the period prescribed by the statute as a bar, it would have been competent to join the one adverse possession to the other, in order to make the bar effectual. For it is immaterial whether the possession be held for the entire period by one party, or by several parties in succession, each holding part of the time, and all together holding the entire period, provided the possession be continued and uninterrupted, and adverse to the claim of the plaintiff, during the

whole period. But this rule cannot apply here, because Rogers, before the lapse of the period of limitation, surrendered the land to Niles, who thereupon sold it to Benson; after which time his individual possession was not for a sufficient length of time to constitute the statutory bar. When the contract of purchase between Niles and Rogers was rescinded, the land was in Niles's possession, in the same way in which he held it previous to the contract with Benson, and subject to the mortgage of complainants. He could not be said to hold it adversely to the mortgage, and consequently there was an interruption of the adverse possession; and, as Benson derived his title from Niles, the commencement of his adverse possession would be the date of his purchase from Niles, and he would be placed in the position in which Niles stood when he conveyed to him. Consequently there was no such adverse possession as would bar the complainants' claim.

The only remaining question is, whether the appellant has had such adverse possession of the south half of the section of land, as will bar the complainants.

Taking the statements of the answer to be true, the appellant purchased this part of the land from Niles in August, 1845, and executed his notes for the purchase-money, received a bond for title, and took possession. He does not claim that he paid the purchase-money at the date of the purchase, nor does it appear at what time it was paid.

If there had been a deed of conveyance, with delivery of possession at the time, or, if the purchase-money had been paid, and a valid agreement for a conveyance made, accompanied by delivery of possession, the appellant would have been entitled to protection on the ground of adverse possession, under color of title. But if the purchase-money is not paid, the possession is not adverse, but is held to be in subordination to the title of the vendor, until the money is paid. It is said to be a case of "mutual understanding, and mutual confidence between the parties, so that the purchaser could not be considered as holding a possession adverse to the title which he acknowledged." *Kirk* v. *Smith,* 9 Wheat. 251; *Brown* v. *Kiny,* 5 Met. 173; *Jackson* v. *Hotchkiss,* 6 Cow. 401; *Prop. No. Six* v. *McFarland,* 12 Mass. 325.

The possession of the appellant was, therefore, not adverse to Niles, nor could it be adverse to the mortgagees, because he occupied the same position towards them which Niles occupied, and could not, under the circumstances under which he held the land, claim the benefit of an adverse possession against the mortgagees. His adverse possession cannot be said to commence until he received a deed of conveyance, or paid the purchase-money. The deed was executed about four years before the filing of the amended bill, and of course that does not show a sufficient time to constitute a bar. The time at which the purchase-money was paid does not appear, and therefore we could not hold that it was paid a sufficient time before the filing of the amended bill to give effect to the bar, by creating an adverse possession.

We are, therefore, brought to the conclusion, that there is not such an adverse possession in the appellant shown, as will bar the complainant's claim.

With regard to the appellant's defence, as a *bonâ fide* purchaser without notice, it is sufficient to remark, that he had notice in law of the mortgage by its registration, and cannot claim protection as a purchaser without notice.

We consider the decree correct, and it is therefore affirmed.