## McQUEEN vs. IVEY.

[REAL ACTION IN NATURE OF EJECTMENT.]

1. *Adverse possession by purchaser, under color of title.*—If a purchaser enters into the possession of land under a vendor's bond, conditioned to make titles when the purchase-money is paid, he cannot, so long as the purchase-money remains unpaid, set up adverse possession against the vendor under color of title; but, after the purchase-money has been paid in compliance with the terms of the contract, such a bond is color of title, and subsequent possession under it for a sufficient length of time will bar the legal title.

APPEAL from the Circuit Court of Lowndes.
Tried before the Hon. ROBERT DOUGHERTY.

THIS action was brought by William E. A. McQueen, against Samuel Ivey, to recover the possession of a certain tract of land described in the complaint, together with damages for its detention; and was commenced on the 20th August, 1857. The defendant pleaded not guilty, and the statute of limitations of ten years. The evidence adduced on the trial, and the rulings of the court thereon, are thus stated in the bill of exceptions:

"The plaintiff proved, that Abram Adams purchased the lands now sued for from the United States in 1832, obtained patents therefor in 1835, sold said lands to one Owens in 1833, and gave him a bond to make titles on the payment of one-half of the purchase-money,—the other half being paid in cash; that said Owens went into the possession of said lands under said bond, held said lands for some time, sold them in 1835 to one J. L. Williamson, and transferred said bond to him by delivery; that said Williamson went into possession of said lands under said bond, and so remained in possession until the 1st January, 1844; that in March, 1854, said Williamson sold said lands to the plaintiff in this suit, and transferred said title-bond to him; that said Adams made a deed for

McQueen v. Ivey.

said lands to plaintiff in 1855, and took up said title-bond; that the defendant was in possession of said lands at and before the commencement of this suit, and that the annual rent thereof was worth $——.

"The defendant then introduced evidence, tending to show that, in 1840, one Knight obtained a judgment against said J. L. Williamson, and had execution issued thereon; that said lands were levied on, under execution on said judgment, in October, 1843, and were sold by the sheriff on the 1st January, 1844; that the defendant became the purchaser at the sale, and received the sheriff's deed; that shortly after his said purchase, to wit, in January, 1844, the defendant authorized the erection of a blacksmith's shop on said lands, which was kept up about a year, but was then burned down, and was not rebuilt; that the defendant paid the taxes assessed on said lands, from time to time, from the time of his said purchase to the present; that he leased a part of said lands, a short time after his said purchase, to some persons in the neighborhood, to build a church on; that the church was built thereon, and was occupied by the members, under said lease, from that time to the commencement of this suit; that there was a race-track on said lands at the time of the defendant's said purchase; that this track was used by the defendant for more than ten years before the commencement of this suit, and, by his authority, was occasionally used by other persons; that the defendant, at various times after his said purchase, warned trespassers off said land, and claimed them in good faith as his own, under the title acquired as before stated; and that said claim was open, public, notorious, undisturbed, and continued from the time of the defendant's said purchase until the commencement of this suit. But the evidence showed, also, that said Adams had removed to Mississippi before the said sheriff's sale, had resided there ever since his removal, and was residing there at the time of the execution of his said deed to the plaintiff; and there was no evidence showing that, at or before the making of his said deed, he had any notice of the defendant's claim to said lands. The testimony

showed, also, that the balance of the purchase-money was paid, in 1836, to said Adams' brother and agent, who was authorized to receive the same, but who never paid the same to said Adams; but said title-bond was never delivered to said Adams, until delivered by the plaintiff in this suit, as above stated.

"This being all the evidence in the cause, the court charged the jury, that the plaintiff was not entitled to recover, if they found the foregoing facts to be true; to which charge the plaintiff excepted, and, in consequence of said charge, took a nonsuit."

The charge of the court is now assigned as error.

WATTS, JUDGE & JACKSON, for appellant.—1. Possession under an executory contract of purchase is not adverse to the owner of the legal title, unless there is an open assertion of title notoriously made, and notice thereof brought home to the holder of the legal title; and the statute of limitations does not commence to run in favor of the person in possession, until both these things concur.—Sellers & Cook v. Hayes, 17 Ala. 749; Seabury v. Stewart & Easton, 22 Ala. 217; Benje v. Creagh's Adm'r, 21 Ala. 151; Knight v. Bell, 22 Ala. 198; Herbert v. Hanrick, 16 Ala. 581; Harrison v. Pool, 16 Ala. 167.

2. It is a universal rule, that the possession of a trustee never becomes adverse, so as to prevent a transfer by the *cestui que trust*, or to make the statute of limitations begin to run, until he openly and notoriously asserts title in himself, and brings notice of such assertion home to the *cestui que trust*.—Kane v. Bloodgood, 7 Johns. Ch. Our own court has extended this principle to *quasi* trusts. Boyd v. Beck, 29 Ala. 704; Herbert v, Hanrick, *supra;* and other cases above cited.

3. If the defendant had bought the land from Knight, Williamson, or any other person holding under a title-bond from Adams, his possession could never have become adverse to Adams, until accompanied with public and notorious assertion of title, and knowledge thereof brought home to Adams; and the fact that he purchased at sheriff's sale, cannot affect the principle. If Williamson were the

defendant, he could not successfully resist a recovery on the plaintiff's title; and Ivey, claiming under him, can occupy no better position. At the time of the defendant's purchase, Williamson had only an equitable title, which could not be sold under execution at law.—Elmore v. Harris, 13 Ala. 360. The defendant was bound to know that Williamson held under a bond for titles.—McDougald v. Scroggins, 8 Ala. 385.

4. The question of adverse possession ought to have been left to the jury.—Herbert v. Hanrick, *supra.*

BAINE & NESMITH, with R. M. WILLIAMSON, *contra.* 1. Where a vendor of land gives a bond for titles, and afterwards receives payment of the purchase-money, the subsequent possession of the purchaser is adverse to him, and, if continued during the statutory period, will bar the legal title.—Ellison v. Cathcart, 1 McMull. 7; Bank v. Smyers, 2 Strob. Law, 28; Van Blarcom v. Kip, 2 Dutch. (N. Y.) 361; Ray v. Goodman, 1 Sneed, 586; Brown v. King, 5 Metcalf, 173; Benson v. Stewart, 30 Miss. 57; Angell on Limitations, §§ 405–6, 471; Sellers & Cook v. Hayes, 17 Ala. 752.

2. The plaintiff's deed, having been made pending the defendant's adverse possession, is champertous and void. Harvey v. Carlisle, 23 Ala. 635; Abernathy v. Boazman, 24 Ala. 189. The case of Sellers & Cook v. Hayes, *supra,* is not law on this point. The court, in that case, entirely overlooked the fact that the purchase-money had been paid, and placed their decision on the ground that the purchaser held the land in trust for the *unpaid* purchase-money. The case of Seabury v. Stewart & Easton, 22 Ala. 217, asserts the true doctrine.

3. There can be no doubt, under the facts proved, that the defendant had possession of the land. In countries where all the land is enclosed, actual enclosure and occupation are necessary to constitute possession; but in this country, the exercise of visible and notorious acts of ownership is sufficient. The fact that a party is claiming under color of title, calls for the application of a more liberal inference in favor of his possession.—Spear v Ralph,

14 Vermont, 404; Ewing v. Burnett, 11 Peters, 53; Draper v. Shoot, 25 Missouri, 203.

R. W. WALKER, J.—Where a party enters into the possession of land under a vendor's bond, conditioned to make titles when the purchase-money is paid, his possession, so long as the purchase-money remains unpaid, is held to be in subordination to the title of the vendor; and in an action by the latter for the recovery of the land, the vendee cannot claim the protection of the statute of limitations, on the ground of adverse possession under color of title. The very instrument under which the party enters and holds, shows upon its face that he cannot claim the land as his until he has paid the purchase-money.—Seabury v. Stewart & Easton, 22 Ala. 207; Bank v. Smyers, 2 Strob. Law, 28; Benson v. Stewart, 30 Miss. 57; Paxson v. Bailey, 17 Geo. 600; Jackson v. Camp, 1 Cowen, 605; Secrest v. McKennan, 6 Rich. Eq. 72: Woods v. Dille, 11 Ohio, 453; Stamper v. Griffin, 20 Geo. 321.

But, when the vendee has complied with the terms of the contract on his part, by paying the purchase-money, such a bond is color of title; and if he thereafter remain in possession, claiming the land as his own, for the period prescribed by the statute of limitations, the legal title will be barred.—Jackson v. Foster, 12 Johns. 490; La Frombois v. Jackson, 8 Cowen, 597; Briggs v. Prosser, 14 Wend. 227; Fosgate v. Herkimer Co., 12 Barb. 352; Bank v. Smyers, 2 Strob. Law, 28; Ellison v. Cathcart, 1 McMull. 7; Brown v. King, 5 Metc. 173; Barton v. Morris, 15 Ohio, 408; Drew v. Towle, 10 Foster, 531; Stamper v. Griffin, 12 Geo. 458; Benson v. Stewart, 30 Miss. 58; Lander v. Ronnsaville, 12 Texas, 195; Angell on Lim. §§ 405-6.

Sellers & Cook v. Hayes, 17 Ala. 749, is not in conflict with the doctrine last stated. In that case, the court did hold, that the possession of the vendee, under a bond for titles, will not prevent the lien of a judgment, rendered against the vendor during the continuance of such possession, from attaching to the land; and this was so held,

although it was shown that the vendee in that case had paid the purchase-money at the time of the purchase. Whether this fact was allowed its due weight, we do not now inquire. On examining the opinion of the court, it will be seen, that it is placed upon an assumed distinction, between an adverse possession that will give title under the statute of limitations, and such adverse possession as will enable the tenant to set up title in himself or another, or would prevent him who had the title from transferring it; and it is expressly said, that if no suit had been brought against the vendee, or those claiming under him, until twenty years from the time he took possession, the statute of limitations would have protected him from a recovery.—See page 752. This case is, therefore, not an authority against the rule we have laid down above.

It results, that there was no error in the charge of the court.

Judgment affirmed.