## ORMOND vs. MARTIN.

[BILL IN EQUITY FOR PARTITION OF LANDS.]

1. *Adverse possession by purchaser under color of title.*—Where a purchaser enters into the possession of land under a vendor's bond, conditioned to make title by a specified day, which must arrive before a part of the purchase-money is due by the terms of the contract, his possession cannot be considered adverse to the vendor, until the day appointed for the conveyance of the title; and where such bond is executed by one who professes to act as the agent of several joint owners, for one of whom he has no authority to act, and is thus conditioned for the conveyance of title by them, the character of the purchaser's possession is the same as to all the owners.

2. *Action at law in suits for partition.*—The act of February 6, 1858, "to regulate the practice in partition suits," (Session Acts 1857-58, p. 294,) dispenses with the necessity of an action at law, to settle a controverted question of legal title arising in a chancery suit for the partition of lands.

3. *Liability for rents, and compensation for improvements.*—In a chancery suit for the partition of lands, by analogy to the rule prescribed by statute for real actions at law, (Code, § 2216,) a defendant, who holds possession under color of title, in good faith, will not be charged with rent for more than one year before the commencement of the suit; and he will be allowed compensation for the value of improvements made by him during such possession, not exceeding the amount of rents charged against him.

APPEAL from the Chancery Court at Tuskaloosa.
Heard before the Hon. JAMES B. CLARK.

THE bill in this case was filed, on the 12th February, 1857, by the children and heirs-at-law of John F. Martin, deceased, against John J. Ormond; and sought a partition of a certain tract of land, of which the defendant had the possession, and of which the complainants claimed to be entitled to an undivided fifth part, as tenants in common with him, together with one-fifth part of the rents accruing during the defendant's possession. The land in controversy belonged to William A. Martin, who died in August, 1842, intestate, without wife or children, and leaving five brothers and sisters as his heirs-at-law,

one of whom was John F. Martin, the father of the complainants. Letters of administration on the estate of said William A. Martin were granted, in September, 1842, to James M. Bradford, who was the husband of one of the decedent's sisters and heirs-at-law. In December, 1845, Bradford, professing to act as the agent of the heirs-at-law of said William A. Martin, all of whom were then of full age, sold the tract of land now in controversy to the defendant, and executed to him a bond for titles, dated the 19th December, 1845, and conditioned "to make to the said Ormond, and to cause to be made by the heirs-at-law of William A. Martin, a title in fee-simple to the said lands by the 1st of July next." By the terms of the contract, $3,000 of the purchase-money was to be paid by Ormond during the then " present season," and the balance in two equal payments, of $1577 50 each, on the 1st January, 1847, and 1848, with interest from the 1st January, 1846. Ormond entered into the possession of the land, under the contract, on the 1st January, 1846 ; continued in the possession up to the commencement of this suit, and erected valuable improvements. John F. Martin, the father of the complainants, died in February, 1846, having never conveyed his interest in the lands to the defendant, nor otherwise ratified the sale by Bradford ; but all the other heirs of William A. Martin promptly ratified the sale, and executed conveyances to the defendant.

The defendant demurred to the bill, for want of equity, and pleaded the statute of limitations of ten years. The chancellor overruled the demurrer, and, on final hearing on pleadings and proof, rendered a decree for the complainants; holding, that the plea of the statute of limitations was not sustained by the facts, that the defendant was not entitled to compensation for improvements made by him on the land, and that he was chargeable with rent from the time his possession commenced. Each part of the chancellor's decree is now assigned as error.

E. W. PECK, for appellant.—1. The demurrer to the bill

ought to have been sustained, because the complainants had not established their title at law.—4. Kent's Com.. 364–5, note *a* ; *Wilkin v. Wilkin*, 1 Johns. Ch. 118 ; *Phelps v. Green*, 3 Johns. Ch. 302 ; *Clapp v. Bromaghan*, 9 Cowen, 520.

2. The plea of the statute of limitations of ten years was a complete defense to the suit. The defendant purchased the land from one who represented that he was authorized to sell, and whom he believed to be so authorized ; and his possession, taken in good faith under that purchase, was under color and claim of title, and continued for more than the length of time prescribed by the statute as a bar.—*Jackson v. Smith*, 13 Johns. 406 ; *Clapp v. Bromaghan*, 9 Cowen, 550–56 ; *Jackson v. Wheat*, 18 Johns. 40 ; *Jackson v. Newton*, 18 Johns. 355 ; *Jackson v. Vermilyea*, 6 Cowen, 677 ; *Smith v. Burtiss*, 9 Johns. 180.

3. The defendant ought not to have been charged with rent for a longer period than one year before the commencement of the suit.—Code, § 2216.

4. If the defendant is liable for rents, he is entitled to compensation for improvements.—*Jones v. Ward*, 10 Yerger, 169 ; *McKinley v. Holliday*, 10 Yerger, 477 ; *Horton v. Sledge*, 29 Ala. 478.

W. COLEMAN, and S. F. HALE, *contra.*—1. There was no necessity for an action at law to establish the complainants' title.—*Horton v. Sledge*, 29 Ala. 478 ; *Delony v. Walker*, 9 Porter, 498 ; 6 Dana, 374.

2. The statute of limitations begins to run only from the commencement of an adverse possession.—*Tillotson v. Doe*, ex dem. *Kennedy*, 5 Ala. 410 ; 4 Wash. C. C. 368. The defendant went into possession under a title-bond, which expressly recognized the title to be in the heirs of William A. Martin ; and his possession could not possibly become adverse to them, until the 1st July, 1846, when, by the terms of the contract, their title was to be conveyed to him.—11 Ohio, 455 ; 12 Mass. 325 ; *Seabury v. Stewart & Easton*, 22 Ala. 217. The defendant's possession not

being adverse to John F. Martin at the time of his death, and the complainants being infants at that time, the statute of limitations could not bar their rights. Nor are the facts shown which are necessary to constitute adverse possession between tenants in-common.—*Benje v. Creagh*, 21 Ala. 156 ; *Harrison v. Poole*, 16 Ala. 174 ; *Cotton v. Thompson*, 25 Ala. 680 ; *Johnson v. Toulmin*, 18 Ala. 50 ; 5 Wheaton, 125.

3. On the question. of rents and'-improvements, the appellees rely on *Horton v. Sledge*, 29 Ala. 478, and authorities there cited.

R. W. WALKER, J.—1. The land, a partition of which is sought, belonged to William. A. Martin in his life-time, and on his death descended to his heirs, one of whom was John F. Martin, the father of the complainants. Ormond went into possession of the land about the 1st of January, 1846. John F. Martin (the father of the complainants), died in February, 1846. The question to be determined is, whether the possession of Ormond, commencing on the 1st January, 1846, was adverse to John. F. Martin, who died in the succeeding month ; for, as the complainants were minors at the death of their father, unless Ormond's possession was at that time adverse, his plea of the statute of limitations must fail.

The contract, made on the 19th December, 1845, between the defendant and Bradford, recites that Bradford, acting for himself and the heirs of William. A. Martin, sold the land to the defendant, for $6,080, of which amount the sum of $3,000 was to be paid by Ormond during the then "present season;" and the balance in two equal payments, of $1577 50 each, on the 1st January, 1847 and 1848, with interest from 1st January, 1846 ; and Bradford bound himself, in the penal sum of $6,000, to make to Ormond, and to cause to be made by the heirs-at-law of William A. Martin, a title in fee-simple to the land by the 1st of July, 1846. The answers of the defendant show, that Bradford professed to be the agent of the heirs of William A. Mar-

tin, all of whom were of age; that defendant believed that Bradford was authorized to sell the land; that, so believing, he made the purchase from Bradford, relying on the power and authority of the latter to make the sale, and that he entered into the possession of, and continued to hold the land, under and by virtue of said purchase. As to all of the heirs except John F. Martin, it is shown that Bradford was authorized to make the sale; for they ratified the same, and severally conveyed to Ormond. But the interest of John F. Martin was never conveyed to Ormond; and, under the pleadings and evidence, it must be held, that Bradford had no authority to sell his share.

Where a party enters into the possession of land under a bond conditioned to make titles when the purchase-money is paid, his possession, so long as the purchase-money remains unpaid, is held to be in subordination to the title of the vendor; and in an action by the latter for the recovery of the land, the vendee cannot claim the protection of the statute of limitations, on the ground of adverse possession under color of title.—*Seabury v. Stewart & Easton*, 22 Ala. 207; *McQueen v. Ivey*, 36 Ala. 308. But, when the vendee has complied with the terms of the contract on his part, by paying the purchase-money, such a bond is color of title; and if he thereafter remain in possession, claiming the land as his own, for the period prescribed by the statute of limitations, the legal title will be barred.—*McQueen v. Ivey*, 36 Ala. 308, and cases cited. In the present case, the bond was not conditioned to make titles upon the payment of the purchase-money, but by a day named, which would arrive, according to the term of the contract, before a part of the purchase-money would be due. The precise question, whether, in such a case, the possession of the vendee can be considered adverse, before the time appointed for the conveyance of the title to him, has never been considered by this court. But we think that the rule deducible from the authorities is, that, until the time appointed for the conveyance of the title, a possession under such a bond must be considered as held in subordina-

tion to the title of the vendor, or person whose convey-
ance is stipulated for.   The principle seems to be, that
where one enters under an executory agreement for a future
conveyance, his possession cannot be deemed adverse, until
he is, by the terms of the agreement, entitled to the con-
veyance.—See *Jackson x. Foster*, 12 Johns. 490 ; *Fosgate
v. Herkimer Co.*, 12 Barb. 356 ; *Stamper v. Griffin*, 12 Geo.
457 ; *LaFrombois v. Jackson*, 8 Cow. 597 ; *Briggs v. Pros-
ser*, 14 Wend. 228; *Jackson v. Johnson*, 5 Cowen, 74 (91–2);
*Higginbotham v. Fishback*, 1 Marsh. 506.

As, by the terms of the contract, Ormond had no right
to demand a deed from the heirs for whom Bradford was
authorized to sell, before the 1st July, 1846, it follows, un-
der the rule above stated, that his possession was, until
then, not adverse to them.   Was the case different as to
the heir whose agent Bradford professed to be, but who
never ratified the sale, and for whom, we must, upon this
record, hold he was not authorized to act ?

Every element in the definition of what constitutes a
title by adverse possession, must exist ; otherwise the pos-
session will not confer title under the statute of limitations.
*Groft v. Weakland*, 34 Penn. 304.   The fact of possession
is but a link in the chain of title by adverse holding.   It
is the occupation with an *intent* to claim against the true
owner, which renders the entry and possession adverse.
So long as the possessor declares that he holds in subordi-
nation to the title of another, the possession cannot be
deemed adverse.   The question of adverse possession is,
therefore, peculiarly one of intention.   That it is the *in-
tention* to claim title which makes the possession adverse,
is the doctrine upon which all the decisions proceed.   If
it be clear that there is no such intention, there can be no
pretense of adverse possession.   The fact of the possession,
and the *quo animo* it commenced or continued, are the only
tests.—Angell Lim. §§ 384, 386, 390, and authorities cited.

Now, it is certain that, so far as Ormond's intention
fixed the character of his possession, it was the same as to
all the heirs of Martin.   If he intended to hold adversely

to John F. Martin, then he intended to hold adversely to the other heirs. His belief was, that he occupied the same position towards John F. Martin that he occupied towards the other heirs. His intention was to hold under the bond. He did not claim to hold otherwise than under the bond; and, as that recognized the title as in the heirs, his possession must have been in subordination to their title. Where the very instrument under which one holds recognizes the title to the land as in another person, and stipulates for a future conveyance of the same to the possessor, it is impossible in the nature of things that he can intend to hold adversely to the person whose title he thus recognizes. Authorities *supra*.

The precise question we are discussing, was considered in the case of *Stamper v. Griffin*, (20 Geo. 312,) where it was held, that one who holds land under a bond for titles, in the name of the true owner, does not, so long as the purchase-money remains unpaid, hold adversely to the true owner, even though the bond be a forgery; provided he believes it to be the bond of the true owner. The argument is put in so striking a light by Benning, J., who delivered the opinion of the court, that we transcribe a portion of it.

"Possession, to be available under the statute of limitations, has to be adverse to the title of the true owner. The possession of no person can be adverse to the title of the true owner, unless the person intends it to be adverse to that title. No one can intend a possession to be adverse to the title of the true owner, which possession he considers himself as holding *under* the true owner. Every one who holds his possession under a bond for titles, made by the true owner, must, if the purchase-money remains unpaid, consider himself as holding under the true owner. Therefore, no one who so holds, can intend his possession to be adverse to the title of the true owner; and therefore, the possession of no one who so holds, is adverse to that title. So equally every one who holds his possession un der a bond for titles, not made by the true owner, but

which he believes to have been made by the true owner, and not by some man personating the true owner, must, if the purchase-money remains unpaid, consider himself as holding under the true owner. That must be his *thought*, if he believes the bond to be genuine, whether it be genuine or not. Therefore, no one who so holds can *intend* his possession to be adverse to the title of the true owner; and therefore, the possession of no one who so holds, is adverse to the possession of the true owner. In these two sorts of possession, the result is precisely the same, whether the bond be spurious or genuine; because, in these two sorts of possession, the *intent* of the holder is the same. In each, he intends his possession to be a possession under the true owner; and intending this, he cannot intend the possession to be adverse to the true owner's title.        *        *        *        *        *        *

"To illustrate : C. is the owner of a lot of land ; A. goes to B., and says to him, that he is the agent for C. to sell the lot, and sells the lot to B., with the understanding that the title is to be made by C., when the purchase-money shall have been paid by B., and that he is to get from C., for B., C.'s bond to that effect; A. brings a bond to B., with C.'s name signed to it, and delivers it as a bond of C.; the bond is a forgery ; B. takes possession under it; B. does not intend to hold adversely to C., because he *thinks* he is holding under C.; and so thinking, it cannot be supposed that he *intends* to hold adversely to C."

Having before ascertained that the possession of Ormond was not, at the death of John F. Martin, adverse to the title of the heirs for whom Bradford was authorized to sell, it follows from the principles just laid down, that it was not adverse to the title of John F. Martin, for whom Bradford (in whose assumed authority Ormond trusted) professed to be the agent.

2. The rule of law which required an action at law, to settle a controverted question of legal title, arising in a chancery proceeding for the partition of land, is changed by statute in this State; and it is not now indispensable that such suit should be had.—Acts '57–8, p. 294.

3. Section 2216 of the Code provides, that "persons holding possession under color of title, in good faith, are not responsible for damages, or rent, for more than one year before the commencement of the suit." Although this section is part of a chapter which relates to real actions in courts of law, we think that a court of chancery should apply to a case like this, which is in the nature of an equitable ejectment, a rule analogous to that which the statute prescribes for the action at law. Hence, we think that the chancellor erred, in charging the appellant with rent for more than one year before the commencement of the suit. The appellant is entitled to the value of the improvements made by him after the 1st July, 1846, at which time the bond under which he entered became color of title ; but it must be borne in mind, that he can in no event be entitled to compensation for improvements made, beyond the rents charged against him.—*Horton v. Sledge,* 29 Ala. 498, and authorities there cited.

Decree reversed, and cause remanded.