## W. E. MORING v. HENDERSON ABLES.

1. ADVERSE POSSESSION.  *In favor of vendee against vendor.  Commences when.*
   Where land has been sold and possession delivered upon an agreement, verbal or written, to convey the title when the purchase-money shall have been paid, the vendee's possession cannot be adverse to that of the vendor until after all the purchase-money has been paid or the right of action to recover it has been barred by limitation.

2. EJECTMENT.  *Upon forcible eviction.   Against owner entitled to enter peaceably.  Action of unlawful entry and detainer.*
   A vendee of land having no legal title thereto, and having failed to comply with his contract of purchase, cannot maintain ejectment to recover possession

of such land from one who, being the purchaser of the legal title thereof and having the right to make a peaceable entry, took forcible possession of the same. To recover, in such case, the aggrieved party should resort to the action of unlawful entry and detainer.

APPEAL from the Circuit Court of Yalobusha County.

HON. W. S. FEATHERSTON, Judge.

This is an action of ejectment brought by Henderson Ables against W. E. Moring to recover the possession of certain lots of land in the town of Coffeeville. The facts developed by the evidence are sufficiently stated in the opinion of the court. A jury was waived and the case tried by the judge of the court below, who rendered a judgment in favor of the plaintiff, from which the defendant appealed to this court.

*Golladay & Lester*, for the appellant.

Is Moring's possession that of an intruder, or is it the possession of one in under title or color of right? If the former, then the judgment of the court below is right; but if the latter, the judgment is unquestionably wrong, and that, too, regardless of the mode or manner by which the possession was acquired.

Now it is not contended that Ables had title. He was in under a parol contract to purchase with Wilkie, a contract void under the statute of frauds, and was at most but the tenant at will or sufferance of Wilkie, and held in complete subordination to Wilkie's superior right. That Wilkie had title all must admit, and so admitting, let it be supposed that Wilkie had lived, and in January, 1883, finding that Ables would not pay, had dispossessed him in any way whatever, would it be contended that Ables could sustain ejectment and recover the property in the face of his own admissions that he had no title, had never paid the price, and was not to have a deed till the money was all paid? I apprehend not. But Wilkie is dead—died in full and undisputed ownership of title to the property. At his death the title was cast by descent on his heirs. Suppose that the estate owed no debts, and that in January, 1883, the heirs of Wilkie, finding that Ables had not and would not pay the money he had agreed to pay their father for the lots, dispossessed him, could Ables recover in ejectment against them?

No one would so claim. But the title of the heirs has been divested by a sale of the property by the administrator, made under a decree or declaration of insolvency of Wilkie's estate by the proper court, which decree has been appealed from and affirmed by this court. Moring bought the property at the sale under the declaration of insolvency, and has now and had at the time he took possession the administrator's deed to it. By his purchase he succeeded to all the rights of Wilkie or of Wilkie's heirs, and as ejectment could not be maintained against them it must fail against him.

So far as paying part of the purchase-money is concerned, Ables' rights have been settled by this court. *Hairston* v. *Jaudon*, 42 Miss. 380. He by such payments simply became a creditor of Wilkie's estate to the extent of the money paid and nothing more, and if he loses it he can charge the loss to his own folly or neglect.

In view of the whole case, I reach the conclusion that Ables, being in possession, could hold against the world except one holding the title or color of right; that he could hold against all intruders or persons having neither title nor color of right to the property, and that if dispossessed by any of these he could recover, as against them, the property in ejectment; but that Moring, having not only color of right but the absolute title to the property, in getting possession did nothing more than take what was his own, and of that no one without title can dispossess him. If in taking possession the plaintiff, Ables, or any member of his family was damaged or injured in his person or estate unnecessarily, or if any of the penal laws of the State were violated, the courts of the country are open to them, where civil actions for damages sustained may be prosecuted or criminal prosecutions instituted. But these are questions foreign to the issue involved in this case. The only question to be considered here is that of title and ownership. Moring has title and ownership; Ables has none; and under these (title and ownership) he (Moring) holds possession, and there can be no law to dispossess him in favor of one who, like Ables, comes before the court and admits that he has no title. *Hyatt* v. *Wood*, 4 Johnson's Reports 750; *Jackson* v. *Seelye*, 16 Johnson's Reports

196; *Lum* v. *Reed*, 53 Miss. 73; *Kerr* v. *Farish et ux.*, 52 Miss. 101.

*A. H. Whitfield*, for the appellee.

1. Appellee received no deed; it was a present sale by parol, the vendor on the instant putting the vendee into possession. The case of *Brown* v. *Supervisors*, 54 Miss. 233, conclusively settles the possession of the vendee in such case to be adverse from the moment of entry. The vendee there had not paid the purchase-price, and it was insisted that his possession was, therefore, not adverse. But the court drew the distinction between sales by title-bond and "contracts for future purchases" and sales present and immediate, the vendee going at once into possession, as here, and held the possession adverse. It is true, there was a deed in that case, but that is immaterial to the character of the possession. It is held in *Turk* v. *Barr*, 45 Miss. 194, that no deed or muniment of title is necessary to make possession adverse when it is open and notorious, and in *Green* v. *Mizelle*, 54 Miss. 220, that a parol sale and entry suffices for color of title; and in *Magee* v. *Magee*, 8 G. 138, it is laid down that even where there is no color of title, possession continued for twenty years with claim of title, the possessor, having erected improvements, etc., conferred title by adverse possession. Any number of years greater than ten would do the same. In fact, Wilkie's first administrator states that the lot had been sold to appellee, and this is held to be a controlling circumstance in *Ford* v. *Wilson*, 6 G. 506, and the appellee paid taxes for the whole period—itself held a strong circumstance in *Ewing* v. *Bennett*, 11 Peters (U. S.).

That the possession is adverse in a present sale by parol, accompanied by immediate entry, is held also in the following authorities: *Society, etc.*, v. *Pawlett*, 4 Peters (U. S.) 480; *Blight's Lessee* v. *Rochester*, 7 W. (U. S.) 535; *Catlino* v. *Decker*, 38 Conn. 262. The evidence overwhelmingly shows that appellee claimed as owner against all the world from his entry, and held open, notorious, exclusive, and uninterrupted possession for more than ten years. I claim that appellee had a perfect title when the petition to sell was filed.

2. But suppose appellee had no title, and suppose appellant had a good title, could appellant acquire possession lawfully by violence and force? And if he did so acquire possession, cannot appellee recover it in ejectment? That appellant, on the supposition upon which we are proceeding, was a mere trespasser, and that his method of acquiring will not be tolerated, is clearly settled by the following authorities: Angell on Limitations (sixth edition), § 389, where the author says, speaking of a disseizin : "It, of course, does not mean actual violence, for it is obvious that if a possession taken and held by literally resorting to force would operate in barring the right of the true owner, a breach of the peace and a violation of the public order would then be made the foundation of a legal title;" *Lum* v. *Reed,* 53 Miss. 79 ; *Ewing* v. *Bennet,* 11 Peters (U. S.); *Stampley* v. *King,* 51 Miss. 731 ; and that the appellee can recover in such case the possession thus violently taken from him is clearly settled by these cases of *Lum* v. *Reed* and *Stampley* v. *King.* In the first, very strikingly like this case, the court say, p. 79 : "If they were the true owners they had the right to hold, regardless of their manner of entry, the same not *having been forcible nor fraudulent;* that is, if it were 'forcible' or 'fraudulent' even the '*true owners*' must surrender possession in ejectment." This case is conclusive, but in *Stampley* v. *King,* 51 Miss. 731, the court say : "Although Mrs. King obtained possession of the land by *unlawful means* and might *have been ejected,*" etc. The decree in the case was affirmed because of an agreement of counsel that the case should be finally decided, otherwise Mrs. King would have been ejected, as appellant here should be, even on supposition that appellee had no title.

3. Appellant claims that the possession never was adverse, but the evidence is positive against him, and manifestly the possession was certainly adverse from the time that all remedy to collect the balance of the purchase-money, existing in open account, was barred, which was some six years before the petition to sell was filed. This was left an open question in *Brown* v. *Supervisors,* 54 Miss. *supra,* but is expressly decided in the affirmative in *Ray* v. *Goodman,* 1 Sneed (Tenn.) 586.

COOPER, J., delivered the opinion of the court.

This case presents two questions for decision : First, had the plaintiff, prior to his eviction by the defendant, acquired title to the *locus in quo* by adverse possession? second, if he had not and the defendant is the real owner, may the plaintiff, nevertheless, recover in this action because of the forcible entry of the defendant ?

The facts relative to the possession of the lands by the plaintiff are, as stated by him, that in the fall of 1870 he purchased them from Sylvester Wilkie, agreeing by parol to pay him four hundred and fifty dollars as the purchase-money therefor ; of this sum he was to pay one hundred and fifty dollars January, 1871 ; one hundred and fifty dollars January, 1872, and one hundred and fifty dollars January, 1883, and upon payment of the last sum was to receive a conveyance. He made one payment to Wilkie, and after his death paid other sums to his administrator, but the whole of the purchase-money has not been paid. He remained in possession until January, 1883, when he was forcibly evicted by the defendant, who had bought the land at a sale made by the administrator of Wilkie for the payment of the debts of the estate.

Under these circumstances it is well settled by an almost unbroken current of authorities that the plaintiff had not acquired title by adverse possession.

Where a sale is made, whether by parol or by title-bond, and the conveyance is to be made only upon the payment of the purchase-money, there is an express reservation of the title by the vendor for the security of the purchase-money, and a recognition of such title by the vendee, and until the purchase-money is paid (or what is perhaps equivalent thereto, all right of action to recover it by suit is barred by limitation), the possession of the vendee is not adverse to the title of the vendor, but is by the contract under which the vendee enters, in subservience to and recognition of it. *McCalahan* v. *Barrow*, 27 Miss. 664 ; *Stewart* v. *Benson*, 30 Miss. 49 ; *McQueen* v. *Ivey*, 36 Ala. 308 ; *Ormond* v. *Martin*, 37 Ala. 598 ; *Jackson* v. *Foster*, 12 Johns. 490 ; *Stamper* v. *Griffin*, 12 Ga. 457 ; *Woods* v. *Dille*, 11 Ohio 455 ; *Knox* v. *Hook*, 12 Mass.

325 ; *Higginbotham* v. *Fishback*, 1 Marsh. 506 ; *Brown* v. *King*, 5 Met. (Mass.) 173 ; *Den* v. *Kip*, 2 Dutch. 351.

Where, however, the vendee has executed his part of the agreement by payment of the purchase-money, his possession is from that time adverse to the vendor. *Niles* v. *Davis*, 60 Miss. 750 ; *Brown* v. *King*, 5 Metc. 173 ; *Bryan* v. *Atwater*, 5 Day 181.

If it be admitted that all remedy for the collection of the purchase-money by suit was barred by limitation in January, 1876, (three years after the maturity of the last installment), and that the possession of the plaintiff then became adverse, it will avail him nothing, since he did not remain in possession ten years—the statutory period.

Upon no matter that has fallen under our investigation is there a greater conflict of authorities than upon the question of the rights and remedies of an occupant who has been forcibly evicted by the owner having an undoubted right to make a peaceable entry. The courts in America occupy radically different positions on it, and there is no little conflict of judicial expression in England.

It is conceded by all, that after the entry into power of the Norman conquerors, a tenant under such circumstances had no civil remedy, and it is at least doubtful whether the owner was subject to indictment unless guilty of an actual breach of the peace in addition to the forcibly entry. 1 Russell on Crimes 420 ; *Rex* v. *Wilson*, 8 T. R. 364. But by 5 Rich. 2, c. 8, it was declared that "none shall make entry into any lands and tenements but in case where entry is given by law, and in such case not with strong hand nor with multitude of people, but only in a peaceable and easy manner," on pain of imprisonment, etc.

Upon the change wrought by this statute the conflict of authority has arisen. By some courts it is held that, since the act of entering by force is made unlawful, no right can arise from it, that "a lawful possession cannot be acquired by an unlawful act," and therefore that the possession so acquired cannot be interposed by the owner in defense, in any character of action. The leading case announcing this view is *Destin* v. *Cowdry*, 23 Ver. 631, in which Judge Redfield, in an ardent and exhaustive opinion, contends that

this is the conclusion of the English courts.  See also *Reedy* v. *Purdy*, 41 Ill. 279.

Another view, sustained probably by the weight of English authority, is, that though the tenant may recover damages against the landlord for any trespass against his person or property committed in making the forcible entry or in evicting the tenant after such entry, yet he cannot recover for any damage done to the premises, since to an action of trespass *quare clausum* a plea of *liberum tenementum* could be successfully interposed by the owner, nor can he recover possession of the premises in any other manner than that provided by the statute against forcible entry and unlawful detainer.  *Newton* v. *Harland*, 1 Man. & Gran. 644; *Pollen* v. *Brewer*, 97 E. C. L. R. (7 J. Scott, N. S.) 371; *Beddell* v. *Maitland*, 17 L. R., Chy. Div. 174, and cases therein reviewed.

In America the weight of authority, says Mr. Washburn (1 Wash. on Real Prop. 538), is to the effect that " if the owner of land wrongfully held by another enter and expel the occupant, but makes use of no more force than is reasonably necessary to accomplish this, he will not be liable to an action of trespass *quare clausum*, nor for injury to the occupant's goods, nor for assault and battery, although in order to effect such expulsion and removal it becomes necessary to use such force and violence as to subject him to indictment at common law for a breach of the peace, or under the statute for making forcibly entry."  The authorities cited by him profess, in the main, to be supported by the case of *Newton* v. *Harland;* but this case, according to the latest review of it by the English court which has fallen under our observation, decided " that there is a good cause of action whenever, in the course of a forcibly entry, there has been committed by the person who has entered forcibly an independent wrong, some act which can be justified only if he was in lawful possession."  This is the language of Fry, Chancellor, in *Beddell* v. *Maitland*.  Proceeding, then, to apply the principle to the case before him, he continued : " I come, therefore, to the conclusion that, in respect of his claim for damages for the forcibly entry and eviction, the defendant cannot succeed; but that, in respect of his claim for damages done

to his furniture, which the plaintiff could only justify by a lawful possession, the defendant is entitled to succeed."

Dismissing from consideration all questions except that presented by this record, it appears that the courts of Vermont and Illinois stand alone in holding that a tenant who continues unlawfully in possession can, as against the owner who has made a forcibly entry, recover damages in an action of trespass *quare clausum*, or the possession of the premises by ejectment. 1 Wash. on Real. Prop. 538, and authorities cited in note 3.

Aside from the decided weight of authority by which the opposite view is sustained, it is especially applicable in this State, since with us the action of ejectment is no longer a mere possessory action, but is one in which the title is tried, and a judgment in which would conclude not only the question of possession but also the right of title. Code of 1880, § 2513.

We are, therefore, of opinion that ejectment cannot be maintained by the plaintiff, but that to recover possession of the premises he must resort to the action of unlawful entry and detainer.

*Judgment reversed.*