JACKSON, ex dem. Shaw *vs.* SPEAR.

A party in possession of lands recognizing the title of a claimant, and agreeing
    to purchase, may subsequently deny such title, set up title in himself, and
    shew that his acknowledgment was produced by imposition, or made under
    a misapprehension of his rights; but a party *entering* into possession, under
    an agreement to purchase, cannot dispute the title of him under whom he
    enters, until after a *surrender* of the possession.

THIS was an action of ejectment, tried at the Essex circuit,
in January, 1830, before the Hon. ESEK COWEN, one of the
circuit judges.

The plaintiff claimed to recover lot No. 5 in *Legge's patent*,
and exhibited the following *paper title :* 1. A deed of the whole
tract from William Legge (described as the nephew and heir
at law of Francis Legge, the patentee,) to Joseph Winter, bear-
ing date the 7th November, 1808 ; 2. A deed bearing date the
28th November, 1811, from Joseph Winter to Elisha J. Win-
ter, of the same premises, reserving a few lots sold by the
grantor ; 3. A *quit claim* deed from Elisha J. Winter to the les-
sor of the plaintiff, bearing date the 18th October, 1815 ; and 4.
A *release* from Elisha J. Winter to the lessor of the plaintiff,
bearing date in July, 1819. On the part of the plaintiff, it was
then proved that in 1810 Joseph Winter caused Legge's patent
to be surveyed and allotted, and in the summer of 1811 as-
sembled the occupants, of whom there was a considerable
number, and none of whom pretended to title to the premises oc-
cupied by them ; on the contrary, they expressed a willingness
to purchase of Winter, provided that they could be satisfied of
the validity of his title, and could agree as to the price of the
lands. Several of the occupants purchased, accepted deeds,
and executed bonds and mortgages for the consideration mon-
ey, and at this time, Jacob Spear, the father of the defendant,
preparatory to purchasing the improvements on lot No. 5, which
were then held by another person, bargained with Joseph Win-
ter for the purchase of the *fee simple* of part of lot No. 5 at the
rate of $6 per acre, and, in consequence of such agreement,
concluded a bargain with the occupant for the improvements.

Spear's family were then in Massachusetts; on removing them, and taking possession of the land, he expressed doubts as to the validity of the title of Joseph Winter, or of his grantee, Elisha J. Winter, and the latter immediately commenced an ejectment against him, which was subsequently abandoned upon Spear's solicitation and offer to purchase at the rate originally agreed upon, with interest upon the price 'agreed to be paid, from the time of the original agreement, viz. the 28th August, 1811, provided a deduction of $100 was made, which he asked in consequence of his poverty, produced by a long and continued illness. Winter promised Spear that if he did not sell the whole tract in a body, he would convey to him 195 acres, part of lot No. 5, and when he subsequently sold to Shaw, the lessor of the plaintiff, he solicited him to treat Spear with lenity. With part of the funds received of Shaw, on the sale of the tract, Winter paid the *quit rents* and *taxes* charged upon the land. At the time of the agreement by Spear in 1811 to purchase part of lot No. 5, one Erastus Joiner agreed for the purchase of another part of the same lot, and obtained a deed for the same, and previous to taking his deed, Joiner and Spear agreed as to the division of the lot between them; in 1810, one William Joiner occupied part of lot No. 5 as a *squatter*, whose possession was subsequently transferred to Spear.

On the part of the defendant it was proved that 28 years before the trial, one Wilson occupied a part of lot No. 5. Wilson was succeeded by one Collins, who died in possession, leaving heirs who sold to one Withy, from whom Jacob Spear purchased. One witness stated that the purchase by Spear from Withy was made in 1809, 1810 or 1811, previous to Winter's claim being made, and a son of Jacob Spear stated that his father resided on the lot with his family, previous to the survey in 1810; that Withy claimed to own the lot, but gave only a quit claim deed to his father. The defendant then offered to prove title in himself to the premises in question, by conveyances derived from the heirs at law of Francis Legge, the patentee; this evidence was objected to on the ground that Jacob Spear, *under whom the defendant claimed*, having agreed to purchase from Joseph Winter, and having subse-

UTICA,
July, 1831.

Jackson
v.
Spear.

quently acknowledged the title of Elisha J. Winter, and agreed to purchase from him, the defendant was *estopped* from denying the title of Joseph Winter, and those claiming under him ; the judge overruled the objection, and the defendant proved title in himself, derived from the heirs at law of the patentee. The judge charged the jury that the plaintiff had failed in deducing title from the original patentee, and had not proved such possession of the premises as would entitle him to recover ; if, however, they should find that Jacob Spear had acknowledged Winter's title, and had made a positive agreement to purchase, with a full knowledge of his rights, and had made no mistake in that respect, he and those holding under him were estopped from denying Winter's title, but if they should believe that J. Spear acted under a mistake at the time he made such agreement, he and those claiming under him were not concluded, and in such case it would be the duty of the jury to find for the defendant, as he had shewn title in himself, derived from the original patentee. The jury found for the defendant, and the plaintiff moved for a new trial.

*S. A. Foot,* for plaintiff.

*S. Stevens,* for defendant.

*By the Court,* NELSON, J. The charge of the judge was correct, and proper on the assumption that Jacob Spear was actually in possession of the premises at the time of his recognition of the title of Winter, and agreement to purchase, for it would be unreasonable to preclude a defendant from shewing that the plaintiff had no title, or that he himself had the title to the premises in question, if the acknowledgment of the title of the plaintiff was produced by imposition, or made under a misapprehension of the rights of the respective parties, *Jackson* v. *Cuerden,* 2 Johns. C. 353 ; but I apprehend that there was another very material question, growing out of the facts of this case, which should have been submitted to the jury, and which was not embraced in the view of the case presented to them, viz. whether or not Jacob Spear *entered*

UTICA,
July, 1831.

into possession of the premises under the contract to purchase made with Winter, and consequently under Winter's title. If he did so enter, he and those succeeding to his possession are precluded from denying Winter's title, until they have surrendered the possession thus obtained. 3 Johns. R. 499. 7 id. 157. 14 id. 224. 7 Cowen, 637. The evidence, which was somewhat contradictory, should have been submitted to the jury to determine under what title Spear entered; and they should have been instructed, that if they found that he entered under Winter's title, that the plaintiff was entitled to a verdict; but if they found that he did not so enter, then the view taken by the judge was proper as to the effect of the negotiation for the purchase by Spear, while in the possession and occupation of the premises.

New trial granted.