Motion to set aside the report denied, with $10 costs.

[SARATOGA SPECIAL TERM, December 9, 1851. Willard, Justice.]

---

FOSGATE and others vs. THE HERKIMER MANUFACTURING AND HYDRAULIC COMPANY and others.

The purchaser of real estate, under an executory contract, can not question the title of his vendor. Nor can he hold adversely, until he has performed the conditions of his agreement to purchase, so as to entitle him to a conveyance.

When the consideration is paid, the agreement is tantamount to a deed, as the foundation of an adverse possession.

Where, at the time of an execution sale of the right of the vendee under an executory contract for the purchase of real estate, the statute authorized a sale of a contract interest in land; Held, that the purchaser at such sale became substituted as to the rights and interests of the vendee, and that he entered into possession in subordination to the title of the vendor in the executory contract; and neither himself, nor those holding under him, could interpose any adverse claim which did not appertain to the vendee.

In the absence of proof to the contrary, it will be presumed that the purchaser of the interest of the vendee in an executory contract, purchased

Fosgate *v.* Herkimer Man. and Hydraulic Co.

with knowledge of, and in subservience to the legal title of the vendor; because no presumption unless arising legitimately from facts proved, can be indulged as a basis of an adverse possession, against the legal title.

Strict proof of a possession, hostile in its inception, is necessary, to make out an adverse possession.

If the right of entry, of the plaintiff in an action of ejectment brought since the first day of January, 1830, accrued prior to that date, twenty-five years of adverse holding must have elapsed, to operate as a bar to a recovery. The action would, in such case, be regarded as brought in the place of a writ of right.

Where an adverse possession accrued, if at all, in 1826, and the party having the legal title died in 1830, and his heirs at law brought their action of ejectment in 1849 ; *Held*, that they were entitled to recover in the action upon the seisin of their ancestor.

In an action of ejectment, brought by tenants in common of three-fourths of the estate, in their own right, but claiming the remaining fourth part, in consequence of the death of their co-tenant, to whom it had belonged, it is incumbent on the plaintiffs to show the death of that co-tenant, and that he died without issue.

This can not be done by hearsay, where the fact is susceptible of definite proof, and is of recent occurrence. It should be positively established. Family tradition of the death of a member, unless the declarants be themselves dead, is inadmissible.

Hearsay evidence, as applicable to the fact of death, is governed by the same rules applicable to any other fact in litigation. It is only admitted, because of the necessity of the case, to establish propositions which can not be established by direct or primary evidence.

In the strict action of ejectment no presumption of title in the plaintiff can be indulged, and, if he claims as heir at law of a person who it appeared was married, he must prove that such person died without issue, and that he succeeded to the share or right of such person in the premises in controversy.

Where some of the defendants in an action of ejectment, are not in actual possession of the premises sought to be recovered, but claim an interest in the controversy adverse to the plaintiff, the other defendants being tenants in possession under them, the former may properly be made parties under § 118 of the code, in order to a complete determination of the controversy.

THIS was an action of ejectment tried before the Hon. P. Gridley, one of the justices of this court, at the Herkimer circuit in September, 1851. By consent of parties a verdict was taken for the plaintiffs subject to the opinion of the court upon a case to be made, with leave to either party to turn such case into a bill of exceptions.

The plaintiffs claimed title to the premises in question as heirs at law of Bela Fosgate deceased. It was proved on the trial that Bela Fosgate obtained a conveyance of the premises from John Suiter, dated March 16, 1813, and recorded the same month. Soon thereafter Bela Fosgate took possession under his deed, and continued to occupy till about March, 1821, when he resold the premises to Suiter by written contract, in consideration of the sum of nine hundred dollars, payable in nine equal annual payments. Suiter then went into possession, and Fosgate moved from Herkimer, where the premises are situated, to Auburn.

The Herkimer Manufacturing and Hydraulic Company claimed title under and by virtue of a sheriff's sale upon execution against John Suiter. The sale occurred on the 24th day of March, 1824. A deed was executed by the sheriff to Ralph Merry, the purchaser, dated December 31, 1825, and acknowledged January 23, 1826. The manufacturing company, through several mesne conveyances, acquired the title of Merry. Their deed was dated 24th of April, 1834. The other defendants, Pierson, Weber and Christman, in severalty occupied portions of the premises, being a dwelling, as tenants of the company. It appeared from the proof that Merry took possession under his sheriff's deed sometime in the year 1826, and Suiter's occupation then terminated.

The plaintiffs were William and Blanchard Fosgate and Serene Birdsall, wife of Samuel Birdsall, who was also a party. William, Blanchard and Serene were heirs at law of Bela Fosgate their father. Bela died at Auburn in the winter of 1830. Upon the subject as to who were the heirs living at the commencement of this suit, Charles Van Epps was sworn as a witness and testified, " I knew Dr. Bela Fosgate ; he died at Auburn in 1830, leaving a widow and the following children, viz. Blanchard, William, Walter and Serene. Walter left Auburn soon after the death of his father and went to reside first in the southern states and afterwards in Texas. The widow of Dr. Fosgate, and the plaintiffs, continued to reside at Auburn, until the death of the widow in the spring of 1848. In the winter of 1848, it was reported in the family of Mrs. Fosgate, at Au-

Fosgate *v.* Herkimer Man. and Hydraulic Co.

burn, that *Walter was dead.* It was reported that he was a married man at the time of his death ; that he left a widow." The deposition of Mrs. Eliza Van Tyle was read in evidence, she testified, " I reside in the city of St. Louis. I was in the state of Texas in the month of October, 1848. My business was to arrange in regard to the estate of my brother. I have a sister residing in the city of Harrisburgh, in Texas : she has resided there more than twenty years. I remained there from October, 1848, to June, 1849. At my sister's, I heard of the death of Walter Fosgate formerly of Auburn. I heard this first from General Sherman who was boarding at my sister's. I heard of his death several times while I was at Harrisburgh, and also when I was at Houston. My sister said that Walter had spent considerable time in her family, and that he died in Victoria in Texas. I learned from what I heard, that he died in the winter next preceding the time I was there. I understood that he was a married man at the time of his death. I became acquainted with his widow, Sarah Ann, at my sister's in Harrisburgh ; she said that her husband, at the time of his death, resided in Victoria. The subject of her late husband's sickness and death was frequently spoken of. I never heard that Walter left any child or children." Cephas Adams testified, "I reside at Galveston, in the state of Texas, I knew Walter Fosgate at Auburn and in Texas. He was a surgeon in the army. I understood that he was dead. I heard he was dead early in the year 1848. I heard this from persons well acquainted with him, and from strangers. I heard it at Galveston, some 150 to 200 miles from the place of his death. I had a correspondence with his widow, and in one of her letters she spoke of his death. His death was published in most of the newspapers in Texas about the time it is said to have occurred. All the evidence respecting the death of Walter was received subject to objection. This suit was commenced in March, 1849.

*F. Kernan,* for the plaintiffs.

*C. A. Benton,* for the defendants.

Fosgate *v.* Herkimer Man. and Hydraulic Co

*By the Court*, HUBBARD, J. The question of adverse possession was disposed of upon a former appeal. (9 *Barb. S. C. Rep.* 287.) The case is now strengthened on the part of the plaintiffs by the additional proof of the written contract of sale of the premises from Bela Fosgate to John Suiter. This contract completely silences all pretense of an adverse occupation by the manufacturing company or their grantors. Bela Fosgate obtained the legal title in 1813, and from that time occupied till 1821, when he sold the premises to Suiter, who then went into possession under this contract. The contract was payable in nine yearly payments; and hence was in life, by its terms, till the year 1830. In 1824, the premises were sold on an execution upon a judgment in favor of John O. Ryan against Suiter, and bid off, and subsequently, in 1826, conveyed by the sheriff to Ralph Merry. About the time of the deed, Suiter surrendered the possession to Merry, who, and his grantees, continued to occupy till the manufacturing company obtained their conveyance, in 1834; since which time they have occupied.

From this statement of facts it is plain that Suiter, the purchaser under an executory contract, could not question the title of Bela Fosgate, his vendor. . (*Jackson, ex dem. Livingston*, v. *Walker*, 7 *Cowen*, 637. *Jackson, ex dem. Shaw*, v. *Spear*, 7 *Wend.* 401. *Luce* v. *Carley*, 24 *Id.* 451.) Nor could he hold adversely, until he had performed the conditions of his agreement to purchase, so as to entitle him to a conveyance. (*Jackson, ex dem. Young et al.* v. *Camp*, 1 *Cowen*, 605. *Jackson, ex dem. Swartwout and wife*, v. *Johnson*, 5 *Id.* 74.) When the consideration is paid, the agreement is tantamount to a deed, as the foundation for an adverse possession. (*La Frombois* v. *Jackson, ex dem. Smith et al.* 8 *Cowen*, 589. *Clapp* v. *Bromagham*, 9 *Id.* 530. *Briggs* v. *Prosser*, 14 *Wend.* 227.)

At the time of the execution sale, the statute authorized a sale of a contract interest in land. It must be held, therefore, that Merry, the purchaser, became substituted as to the rights and interests of Suiter, and that he entered into possession in subordination to the title of Bela Fosgate, the vendor. (*Talbot* v. *Chamberlin*, 3 *Paige*, 219.) And neither himself nor those

Fosgate *v.* Herkimer Man. and Hydraulic Co.

holding under him, could interpose any adverse claim, which did not appertain to Suiter. There is no evidence in the case that the contract has ever been paid or satisfied, or that any thing has been paid upon it.

There is no evidence whether Merry, at the sheriff's sale, intended to purchase or supposed he purchased the absolute fee, or merely the contract interest of Suiter. In the absence of proof, it will be presumed that he purchased with knowledge of, and in subservience to the legal title of Fosgate, because no presumption, unless arising legitimately from facts proved, can be indulged as a basis of an adverse possession, against the legal title. Strict proof of a possession hostile in its inception, is necessary. (*Brandt, ex dem. Walton,* v. *Ogden,* 1 *John. Rep.* 156. *Jackson, ex dem. Winthrop,* v. *Waters,* 12 *Id.* 365.) But if it is conceded that Merry's entry, in 1826, was hostile, then the defense fails, because 25 years of adverse holding had not elapsed when this suit was commenced. This action would, in such case, be regarded as brought in the place of a writ of right. The revised statutes, which took effect in 1830, reduced the period of adverse occupation requisite to bar the legal title, from 25 to 20 years, and substituted ejectment in the place of the writ of right. The 45th section of the act, (2 *R. S.* 300,) concerning the commencement of suits, expressly excepts from the provisions of that law, cases where the right of entry and action had previously accrued. In this case it accrued, if at all, in 1826, and hence a possession of 25 years was indispensable as a basis of title. This suit was commenced in 1849; that period, therefore, had not elapsed. (*Cole* v. *Irvine,* 6 *Hill,* 634.)

It is not disputed that the plaintiffs are heirs at law of Bela Fosgate, who died in 1830; they are, therefore, entitled to recover in the action, upon the seisin of their ancestor. The remaining question is as to the extent of that recovery. I think it must be limited to three-fourths of the premises; there is an outstanding title to one-fourth in Walter Fosgate, who is proved to be one of the heirs, and whose death, or that he died without issue, is not established.

The burden of showing the death, or in other words, a complete title in the plaintiffs, was incumbent on them. The proof of death entirely fails, because wholly inadmissible as hearsay. The fact was susceptible of definite proof; it was of recent occurrence, and should have been positively established. Family tradition of the death of a member, except the declarants be themselves dead, is inadmissible. (*Stein* v. *Bowman,* 13 *Peters' Rep.* 220.   1 *Phillipps' Ev.* 194, 197.   *Jackson, ex dem. Garland et al.* v. *Browner,* 18 *John. Rep.* 39.)   Hearsay evidence, as applied to the fact of death, is governed by the same rules applicable to any other fact in litigation.   It is only admitted, because of the necessity of the case, to establish propositions which can not be established by direct or primary evidence.   In this case, there was no necessity of a resort to secondary evidence.   The alledged death was recent.   It occurred in the state of Texas.   It could have been proved by living witnesses, whose testimony could have been obtained upon commission, and when thus attainable it is the only competent evidence, and must be adduced. (*Mima Queen* v. *Hepburn,* 7 *Cranch,* 290.   1 *Greenleaf's Ev.* § 124.   *Jackson, ex dem. The People,* v. *Etz,* 5 *Cowen,* 319.)

It is well settled, that hearsay of death is only admissible under the same limitations and restrictions as on a question of pedigree.  (*Cowen & Hill's Notes, p.* 612 *and cases cited.*) And the ground upon which the admission of secondary evidence, in cases of pedigree, rests, is, that from the great lapse of time, remoteness of the occurrence, or other circumstances, the law presumes for the ends of justice, that original, or direct evidence is not attainable; that all memorials of the fact are lost; and that there are no witnesses living. (2 *Phil. Ev.* 238, *4th Am. ed.* 10 *East,* 120.  18 *John.* 39.)  In the last case, Ch. J. Spencer, alluding to the case of *Higham* v. *Ridgway,* (10 *East,* 129,) says : "Mr. Justice Le Blanc lays down the rule of evidence in cases of pedigree with perspicuity, and places it on a reasonable ground.  He considers it as a departure from the strict rules of evidence, on account of the great difficulty of proving remote facts in the ordinary way by living witnesses; "and on this

ground," he says, "hearSay and reputation, have been admitted in cases of pedigree." Under this reasonable rule, relationship, family membership, and death have been allowed to be proved by family tradition, when there are no witnesses living who could testify to the fact. So too, evidence of long absence in a foreign land, and reputed death, has been allowed. (*Jackson* v. *Etz, supra ; Jackson, ex dem. Miner,* v. *Boneham,* 15 *John.* 226.) Entries in family bibles are admitted in cases of pedigree ; (*Leggett* v. *Boyd,* 3 *Wend.* 379 ;) but only when there is no living witness who can speak to the recorded fact.

But even if the death had been sufficiently established, there is another reason why the recovery must be limited to three-fourths, to wit : it appears that *Walter was married,* and there is no evidence that *he died without issue.* In the strict action of ejectment, no presumption of title in the demandant can be indulged ; the plaintiffs must prove that Walter died without issue, and that they succeeded to his share in the premises. This they have failed to do.

It is contended by the defendants' counsel, that a recovery can not be had against the defendants jointly ; that the company are not in actual possession, and that the complaint does not make out a cause of action against them. An objection might perhaps have been taken by demurrer or answer, but the company have waived it, by claiming in their answer to be the owner of the premises, and it appearing in proof that the other defendants are tenants in possession under them. The company claim an interest in the controversy adverse to the plaintiffs, and were therefore properly made parties under § 118 of the code, in order to a complete determination of the controversy. The other defendants occupy separate rooms in the dwelling, but holding under a common landlord, and the answer not denying a joint tenancy in possession, the technical objection of misjoinder of parties can not now be heard. The right of all parties can be protected, and the ends of justice attained in the present form of action.

The verdict was taken subject to the opinion of the court upon a case. We are, therefore, to order such judgment as should

have been ordered at circuit. The plaintiffs, we think, are entitled to judgment for an undivided three-fourths of the premises in question, and the defendants to one-fourth.

Judgment accordingly.

[ONEIDA GENERAL TERM, January 5th, 1852. *W. F. Allen, Hubbard,* and *Pratt,* Justices.]