SCHUYLER *vs.* MARSH, receiver, &c. and THE NEW YORK
AND ERIE RAIL ROAD COMPANY.

On proceedings under the "Act for the partition of lands," passed March 16,
1785, all three of the commissioners named in the act must attend upon
and superintend the balloting for the lots. If only *two* are present, the pro-
ceedings will be irregular and void.

Where, in an action of ejectment, the defendant claims title and possession un-
der and by virtue of a deed executed to him as receiver, by a corporation,
in pursuance of an order of court, the deed, on production, will suffice to
show that the defendant is in the possession of the premises and claiming
title thereto, under the corporation. The proceedings under which the re-
ceiver was appointed are unimportant, for that purpose, and need not be
produced.

No other person should be made a defendant, in an action of ejectment, ex-
cept the party in actual and exclusive possession.

In such an action it is not erroneous for the judge to submit to the jury, to
find as a question of fact, the location of a monument marking one of the
corners of the land, after parol evidence has been given in regard to it,
without objection.

MOTION for a new trial, on exceptions, on the part of the
plaintiff. The action was ejectment, brought to recover.
seventeen undivided twenty-fourth parts of a lot of land sit-
uate in the town of Fremont, in the county of Sullivan, and
was tried before Justice GOULD, at the Sullivan circuit, in
September, 1861. The complaint charged both of the de-
fendants with an unlawful entry into the premises and un-
lawfully withholding the same from the plaintiff. The
defendant, the New York and Erie Rail Road Company,
by its answer, alleges that it was in possession until August,
1859, when it transferred the premises to Nathaniel Marsh,
as receiver, and that since then it has not claimed, possessed
or withheld the same. The defendant Marsh, by his answer,
denies the title of the plaintiff, and alleges title in the New
York and Erie Rail Road Company up to August, 1859, and
admits that since that time he claims, withholds and pos-
sesses the property, as alleged in the complaint. The plain-
tiff deduced his title down from the crown of Great Britain,
through the Hardenbergh patent. In the deduction of his chain

of title, he introduced an exemplified copy from the office of the clerk of the county of Ulster of a record of proceedings in partition, taken in 1799, under the act entitled "An act for the partition of lands," passed the 16th day of March, 1785. The record was excluded by the presiding justice, on the objection of the defendants, on the ground that only two of the commissioners attended upon the balloting for the lots, and the plaintiff excepted.

The defendants introduced in evidence a deed from the New York and Erie Rail Road Company to the defendant Nathaniel Marsh, bearing date the 24th day of September, 1859, and duly proved and certified, reciting that by an order made in a certain suit in the supreme court, wherein James Brown and John C. Bancroft Davis and Daniel Drew were plaintiffs, and the New York and Erie Rail Road Company and Joseph Walker, Uriah J. Smith and William T. Hooker, trustees, were defendants, on the 2d of August, 1859, a receiver of said corporation and of the said rail road and real and personal property of the said New York and Erie Rail Road Company was ordered to be appointed, and that the defendant Marsh, on a reference for that purpose, was duly named and appointed such receiver, and had given security as such and entered upon his duties as such receiver; and thereupon declaring that by the said deed, made before and pursuant to the directions of the said referee, the said New York and Erie Rail Road Company granted, sold and confirmed to the said Marsh all the said rail road, and all their real and personal property and estate, and all the property, privileges and franchises described in a mortgage given by said company to James Brown and John C. Bancroft Davis, trustees, on the 15th day of August, 1857, commonly called the fourth mortgage of the said company, to have and to hold to the said receiver and his successors and assigns. It was admitted that the description in the deed covered the premises in question. The plaintiff objected to this deed, 1. That the order and proceedings in court authorizing the

transfer and deed were not introduced. 2. That a corporation has no power to transfer franchises and roadway without a special order and proceedings of a court. 3. That the deed was void, conferring no title or interest. The objections were overruled and the testimony admitted, and the plaintiff duly excepted. It was admitted that the premises described in the complaint were in the exclusive possession of the defendant Marsh, receiver. The court thereupon nonsuited the plaintiff as to the New York and Erie Rail Road Company, and the plaintiff excepted. The plaintiff obtained a verdict, under the direction of the court, against the other defendant, for one two-hundred and fortieth part of the premises. Under the direction of the court the jury passed upon the location of one of the monuments, under objection and exception made by the plaintiff. This monument was the monument at the southwest corner of lot No. 21, (the premises in controversy.) This corner was by the plaintiff claimed to be on the river bank, and by the defendant to be up from the river 50 or 60 feet. Parol evidence was given as to its actual location, and the jury decided this question of fact in favor of the defendant.

The partition was made in pursuance of the act entitled "An act for the partition of lands," passed March 16, 1785. (1 *Greenl. ed. Laws, p.* 165.) Section 3 of said act is as follows: "And be it further enacted by the authority aforesaid, that of all surveys and allotments to be made by virtue of this act, two true field books and maps specifying the bounds of every allotment and lot shall be made, and the several allotments and lots laid down and numbered on the said maps, and then signed by the said commissioners, one of which said field books and maps shall be filed in the office of the clerk of the county where the greatest part of the lands lay, and the other in the secretary's office of this state; which, when done, the said commissioners shall cause an advertisement to be published, for at least six weeks, in one or more of the newspapers printed in the city of New York,

Schuyler v. Marsh.

and one or more of the public newspapers printed in the city of Albany, except the lands to be divided lie in the southern great district, in which case such advertisement may be published only in one or more of the newspapers printed in the city of New York, notifying the filing of the field books and maps in the office, and appointing a particular time and place on a day within twenty days, after the expiration of the said six weeks, and requiring all persons interested then and there to attend, to see the several lots balloted for, and that the same may be conducted in a just and impartial manner, one or more of the judges of the supreme court of this state, or of the inferior court of common pleas of the county in which the greater part of the lands lie, not interested in the division, upon the request of the said commissioners, in writing, under their hands, served six days before the time of meeting, shall be present to oversee the balloting so to be made; at which day and place, the said commissioners having then made as many tickets as there are lots in each allotment, with the number of each lot on every ticket, and as many tickets as there are patentees and proprietors, with the name of one of the patentees or proprietors on each ticket; the tickets of names shall be put into a box, and the numbered tickets into another box, and such person or persons as the commissioners shall then appoint shall immediately proceed to draw a ticket of the names, and then a ticket of the numbers, and so proceed until all the tickets are drawn. And after drawing for the lots in one of the allotments, they shall proceed in the same manner to draw for the lots in the other allotment or allotments, if more than one, until the whole drawing is completed. And the lot in each allotment on the maps, bearing the number of the ticket drawn next after drawing the ticket with the name of the patentee or proprietor, shall be the separate and divided share of such patentee or proprietor, and of all such persons holding under him or her; of which balloting, and all the proceedings in such partition, the said commissioners shall make

a full and fair entry and minute in a book; one copy whereof, certified under their hands or the hands of a majority of them, and under the hand of the judge present, shall be filed in the said secretary's office; and another, certified in like manner, in the clerk's office of that county where the greatest part of the lands lay; which same books, or an exemplification under the great seal of this state, shall be good evidence of such partition; and which partition shall be valid and effectual in the law, to divide and separate the said lands."

*M. Schoonmaker,* for the plaintiff.

*D. B. Eaton,* for the defendants.

*By the Court,* HOGEBOOM, J. The plaintiff makes three objections to the decisions of the judge in the court below; none of which appear to me to be well taken.

It is said that the judge erred in excluding the record of partition upon the ground that only *two* of the three commissioners attended upon and superintended the balloting for the lots. It appears to me that his decision was correct, for the following, among other reasons: (1.) The statute is express that the duty shall be performed by *the* commissioners, that is, by *all* of them. (2.) The duty to be performed is delicate and responsible—one calling for the exercise of uncommon care and discretion, and high integrity; in which several persons were interested, and several thousand acres of land were to be allotted and distributed. (3.) The legislature had signified their sense of the importance of the proceeding, by requiring the presence and superintendence of a judge of the supreme court, in order "that the same might be conducted in a just and impartial manner." (4.) The partition thus made was to be conclusive upon the parties, and "valid and effectual in the law to divide and separate the said lands;" and the proceedings were to be entered in

books which, or an exemplification thereof, were to be "good evidence of such partition." (5.) In such cases it has been well held that "when lands are to be taken under a statute authority, in derogation of the common law, every requisite of the statute having the semblance of benefit to the owner must be strictly complied with." (*Sharp* v. *Johnson*, 4 *Hill*, 99.) And also "sales (and it might have been added other dispositions) of real property by public officers, of one description or another, had become so frequent and had excited such active cupidity, and such a spirit of speculation, that there was very great danger of injustice, unless the checks and guards provided by law were strictly supported." (*Denning* v. *Smith*, 3 *John. Ch. R.* 344.) And also, "The rule seems to be well established that in the exercise of a public as well as private authority, whether it be ministerial or judicial, *all* the persons to whom it is committed must confer and act together, unless there be a provision that a less number may proceed." (*Downing* v. *Rugar*, 21 *Wend.* 178.)

I cannot regard the duties to be performed under this act as unimportant, merely ministerial or mechanical; nor of such a nature that the attesting judge may adjudicate upon the same, and in his discretion dispense with the observance of any of the prescribed formalities. He is not placed there for that purpose, but rather as furnishing a guaranty that a strict observance of them will be enforced, and that without it his approbation and certificate cannot be obtained. The responsibility of the act and the conduct of the proceedings, after all, devolved principally upon the commissioners themselves, and the judge was present rather as an impartial witness giving dignity and solemnity, and insuring accuracy in the proceedings, than a magistrate whose decisions were to be conclusive as to the mode of proceeding. Moreover, he made no decision purporting to give validity to the proceedings, or overruling as unnecessary the presence of the third commissioner. The case of *Cole* v. *Hall* (2 *Hill*, 625, 627) is not parallel. *There* it was said that although only two commis-

sioners signed the report, it must be presumed that *all* met and deliberated, and hence the act was the act of all. Here it *expressly* appears that *only two* met and acted, accompanied by the judge. *There* the defects were not even suggested at the trial; and other facts or papers might possibly have explained or obviated the apparent defect. *Here* the objection was distinctly made, passed upon and supported. I think the position here assumed is substantially supported by the following authorities, and is almost directly adjudicated in the modern case of *Powell* v. *Tuttle*. (*Denning* v. *Corwin*, 11 *Wend.* 647. *Bloom* v. *Burdick*, 1 *Hill*, 141. *Sharp* v. *Speir*, 4 *id.* 76. *Sharp* v. *Johnson*, *Id.* 99. *Sherwood* v. *Reade*, 7 *id.* 434. *Powell* v. *Tuttle*, 3 *Comst.* 396. *Pell* v. *Ulmar*, 18 *N. Y. Rep.* 139.)

The deed from the New York and Erie Rail Road Company was properly introduced, and the objections thereto properly overruled. It served, at all events, to show that the defendant Marsh was in the possession of the premises, and claiming title thereto under the New York and Erie Rail Road Company. For that purpose the previous proceedings, demanded by the plaintiff, were unimportant and not necessary to be produced.

The judge also properly nonsuited the plaintiff as to the New York and Erie Rail Road Company. They were unnecessary and improper parties to the suit. The point was for a time in doubt; but it is now held that no other person should be made a defendant in an action of ejectment except the party in actual and exclusive possession. (*Taylor* v. *Crane*, 15 *How.* 358. *Fosgate* v. *Herkimer Manuf. and Hydr. Company*, 2 *Kern.* 580; *S. C.*, 12 *Barb.* 352. *Ensign* v. *Sherman*, 14 *How.* 439. *Walter* v. *Lockwood*, 23 *Barb.* 228. *Sanders* v. *Leavy*, 16 *How.* 308.)

I perceive no error in the judge submitting to the jury to find as a question of fact the location of the monument marking the southwesterly corner of lot No. 2. Although the defendants admitted possession of the premises described in

the complaint, their true *location* was a matter of importance on the trial, and may have been very material to the defense which the defendants sought to establish, to wit, the title to the property, as well as to the proper rendering of the verdict and the subsequent delivery of possession by the sheriff. Parol proof appears to have been introduced in regard to it, without objection at the trial, and I see no impropriety in its entering into the verdict of the jury.

I think the motion for a new trial on the exceptions should be *denied*.

[ALBANY GENERAL TERM, May 5, 1862. *Hogeboom, Peckham* and *Miller*, Justices.]