## HEERMANS v. SCHMALTZ and another.

*(Circuit Court, E. D. Wisconsin.   May 28, 1881.)*

1. EXPRESS TRUSTS—REV. ST. WIS. § 2081, SUBD. 5.

   An express trust to rent and sell lands for the benefit of the grantor
   during his life, and of other persons after his death, may be lawfully
   created under the fifth subdivision of section 2081 of the Revised
   Statutes of Wisconsin.

2. SAME—SUPPLEMENTARY INSTRUMENT.

   Where the beneficiaries of such trust, other than the grantor, are
   named in a supplementary instrument, of a later date, both instru-
   ments may be regarded as one in the construction of the trust.

3. SAME—DESIGNATION OF BENEFICIARIES.

   The designation of certain contingent beneficiaries as a class, and
   not by name, will not render such trust void for indefiniteness.

4. POSSESSION—TITLE—ESTOPPEL.

   A vendee who enters into possession under a contract of purchase
   is estopped from denying the title of his vendor so long as he retains
   possession under the contract.

5. SAME—EVIDENCE—REV. ST. WIS. §§ 4069, 4070.

   Verbal admissions by the vendee that he entered into possession
   under such contract, and that he had never paid anything on the
   same, are not rendered inadmissible in evidence, upon the subsequent
   death of the vendee, by sections 4069 and 4070 of the Revised Stat-
   utes of Wisconsin.—[ED.

Ejectment.

*Jenkins, Elliott & Winkler*, for plaintiff.

*Howard & Wall*, for defendants.

DYER, D. J.   This is an action of ejectment, to recover the
possession of 140 acres of land in Milwaukee county, oc-
cupied by the defendant Schmaltz, as lessee of the defend-
ant Merrick, who claims ownership in hostility to the title of
the plaintiff.   The defence consists of a denial of the plain-
tiff's title, and of adverse possession for a period of 20 years,
which possession is also asserted for a period of 10 years
under claim of title founded upon a deed from one Ellis
Worthington to Levi J. Merrick, father of the defendant
Levi C. Merrick.

The case has been tried without a jury, the parties having

stipulated to submit it to the court. By regular chain of conveyances from the government, the plaintiff proved title in one Joseph Fellows, the plaintiff's grantor, now deceased. By deed of trust executed October 10, 1868, Fellows conveyed the premises in question, with other lands in Pennsylvania and other states, to the plaintiff; the granting clause in the deed, with its provisos, being as follows:

"Now, therefore, I, the said Joseph Fellows, in consideration of the premises, also of one dollar to me paid by the said John Heermans, the receipt whereof is acknowledged, have sold, and by these presents do grant, release, and convey unto the said John Heermans, his heirs and assigns, forever, all my real and personal estate situated in the several states aforesaid, to have and to hold the same unto the said John Heermans, his heirs and assigns, forever: *provided*, always, that the said John Heermans shall sell the said granted lands by retail for the best prices that can be got for the same, and convey the same in fee-simple to purchasers, with covenants of warranty binding my heirs to warrant and defend the titles to the lands so to be sold and conveyed; and, until the said lands shall be sold as aforesaid, he shall rent such of them as can be rented for the best prices that can be got. He shall collect all debts owing to me, and execute deeds as aforesaid for all lands now under contract of sale, on the payment of debts owing on them, respectively. The avails of the said real and personal estate shall be paid, distributed, and disposed of as follows: *First*, to defray the expenses of this trust, to wit, 5 per cent. commission on all money received and paid out, and all necessary and reasonable expenditures in and about the execution of the trust, including local agencies; *secondly*, during my life the residue of all moneys received shall be paid over to me, or appropriated to my uses under my direction; *thirdly*, after my decease, and after the payment of all my just and legal debts and the expense of the trust as aforesaid, the residue shall be distributed as directed in a writing supplementary to this deed, to be executed by me hereafter; or in case that such writing shall not be executed, then the said residue shall be distributed to my heirs according to the laws of the state of New York."

By a supplementary instrument in writing, executed October 15, 1868, Fellows directed the avails of his property and certain real estate to be distributed and conveyed, after his decease, among certain relatives named, in certain specified proportions, with further directions that the shares of such of the residuary shareholders as should die before his decease should be distributed among their children, respectively, according to law. These instruments were executed in the state of New York, where Fellows resided, and where he died on the

twenty-ninth day of April, 1873. On the part of the defendants proof was made of a bond for a deed, dated January 26, 1857, from Fellows, by E. Worthington, his attorney, to Levi J. Merrick, by which Merrick agreed to pay $3,500 for the land, $1,000 dollars of which was to be represented by a note for that amount, payable September 1, 1857, with 10 per cent. interest, and the balance was to be secured by note and mortgage bearing 7 per cent. interest, and payable January 25, 1860.

As a further basis of title, the defendant put in evidence a warranty deed of the premises in question, from Ellis Worthington and wife to Levi J. Merrick, executed May 1, 1857, but not recorded until May 18, 1865. This was followed by proof of a deed from Levi J. Merrick to the defendant Levi C. Merrick, executed May 8, 1878, and a lease from the defendant Merrick to the defendant Schmaltz, executed April 30, 1879. Proof was also made of the execution of a lease of a portion of the premises, dated November 19, 1858, from Levi J. Merrick to one John Cappon, for the term of five years. Certain other documentary evidence in support of the defendants' claim of title was introduced, consisting of a mortgage deed of 20 acres of said land, executed by Isaac Cappon and wife to Levi J. Merrick, November 23, 1866; a contract for a deed of the whole of the premises in question, dated October 12, 1874, from Levi J. Merrick to Casper Traxel and the defendant Schmaltz; and a release of said premises by the Bank of Milwaukee, executed August 11, 1857, from the alleged lien of a judgment recovered July 1, 1857, by the bank, against Ellis Worthington. Proof was also made of possession of the premises by Levi J. Merrick, and those claiming under him, as hereafter more fully stated.

The first question which arises is, what interest or title, if any, was vested in the plaintiff by the instrument of conveyance from Fellows to him, executed October 10, 1868, in connection with the supplementary instrument of date October 15, 1868? It is claimed by the plaintiff that this conveyance is a valid deed, conveying the premises to the plaintiff as

trustee of an express trust, and vesting the legal title in him. On the other hand, the validity of this instrument is attacked on the ground that, if it has any force whatever, it can only be considered a power in trust, created for the benefit of the donor during his life; that as it provides for the disposition of the residue of the property after his death, it could, on the happening of that event, only take effect as a will; that no valid trust is created either under the New York or Wisconsin statute of uses and trusts; that whatever trust was declared, lapsed on the death of Fellows, and did not survive him; that the granting clause in the conveyance, by which the fee is attempted to be conveyed, is repugnant to the other parts of the deed; and therefore that the plaintiff has no such interest or title as enables him to maintain this action. The statute of Wisconsin in force when this conveyance was executed, and now known as section 2081 of the present Revision, provided as follows:

" Express trusts may be created for any or either of the following purposes : (1) To sell lands for the benefit of creditors ; (2) to sell, mortgage, or lease lands for the benefit of legatees, or for the purpose of satisfying any charge thereon ; (3) to receive the rents and profits of lands, and apply them to the use of any person during the life of such person, or for any shorter term, subject to the rules prescribed in the last preceding chapter ; (4) to receive the rents and profits of lands, and to accumulate the same, for the benefit of any married woman, or for any of the purposes and within the limits prescribed in the preceding chapter ; (5) for the beneficial interests of any person or persons, when such trust is fully expressed and clearly defined upon the face of the instrument creating it, subject to the limitations as to time prescribed in this title."

It is understood that this is a literal copy of the New York statute, except that the fifth subdivision has been added in this state, and is not found in the statute of New York. The instrument of conveyance in question has received the attention of the courts of New York in litigation arising thereon in that state. *Heermans* v. *Robertson*, 64 N. Y. 332; *Fellows* v. *Heermans*, 4 Lansing, 230; 13 Abb. Pr. Rep. (N. S.) 1.

In *Heermans* v. *Robertson, supra,* the fact was, that after the execution of the trust conveyance from Fellows to Heermans, Fellows sold to Robertson a portion of the lands em-

braced in the trust deed. Robertson went into possession under his contract of sale, and after Fellows' death Heermans brought ejectment to recover possession of the land. The court held that, conceding the plaintiff in the action became seized under the trust conveyance of an estate in the lands in trust for leasing, with power of sale, as Fellows was entitled to receive to his own use all receipts from sale during his life, and as he could have compelled an execution of the trust by a sale, he having, instead of resorting to a court of equity for that purpose, made a sale, thus accomplishing the same result, Robertson, not being in default, was in equity entitled to hold the premises as against the plaintiff. Two of the judges, Folger and Rapallo, place their judgment expressly on the ground that, under his contract with Fellows, Robertson established an equitable defence to the action. Three of the judges, Allen, Andrews, and Miller, go further, and hold that no express trust was created by the instrument to come into effect at the death of Fellows; and, although they do not decide the point, strongly indicate it to be their view that no express trust is declared in the instrument for any of the purposes for which, by the law in New York, such trusts may be created. *Earl*, J., dissented, and was of the opinion that the conveyance vested in Heermans the legal title upon a valid trust.

In *Fellows* v. *Heermans, supra,* it was held by the supreme court of New York, one of the judges dissenting, that if the provision in the deed of October 10th, with regard to sale of the lands, was inoperative as a trust, the provision for renting the lands and applying the avails would, nevertheless, stand as a valid trust to receive the rents and profits; and, further, that the conveyance contained a valid power in trust.

It is to be borne in mind that these decisions are based upon a construction of the statute of New York, and although the opinions of the judges indicate that they had many doubts as to the operative effect that should be given to the conveyance in question, I think it a fair deduction from the decisions that, in New York, this instrument could not be upheld

as declaring an express trust for any of the purposes for which, by the law of that state, such trusts can be created. And, in considering the question here, my opinion is that support for this conveyance must be found, if at all, in the fifth subdivision of the statute of this state, which is not contained in the New York statute, and which authorizes the creation of an express trust "for the beneficial interests of *any person or persons,* when such trust is fully expressed and clearly defined upon the face of the instrument creating it." Touching this clause in the Wisconsin statute of uses and trusts, Chief Justice Dixon, in *Goodrich* v. *The City of Milwaukee,* 24 Wis. 430, says that—

" It is not found in the statute of New York, and first appeared in this state in the Revised Statutes of 1849. The addition of that subdivision to the four which precede it, and which are found in the statute of New York, establishes, as it was undoubtedly intended to do, a policy in this state upon the subject of active trusts entirely different from that which prevails in the state of New York. It shows very clearly that *no active trusts were intended to be affected or abolished by any provision of the statute,* though the language of some of its sections, literally construed, may be broad enough to include them; but that *any such trust* may still be created, when, in the language of subdivision 5, 'it is fully expressed and clearly defined upon the face of the instrument creating it.' "

It follows, therefore, that if this provision of the Wisconsin statute authorizes such a trust as is created by the conveyance in question, the decisions in New York before cited are inapplicable. Does the conveyance declare an express trust of a nature covered by this subdivision of the statute? It is a conveyance for a specified consideration to the plaintiff, Heermans. It directs the grantee to sell the lands by retail, with covenants of warranty. It provides further that until sale such part of the lands as the grantee can rent shall be rented for the best prices obtainable. It contains a direction to collect the grantor's debts, and finally provides that the avails of the estates, real and personal, shall be paid and distributed—*First,* to defray the expenses of the trust; *secondly,* to pay to the grantor during his life, or to appropriate to his use, under his direction, the residue of all moneys received; and, *thirdly,* after his decease, and the

payment of his debts and the expenses of the trust, to distribute the residue as directed in a writing supplementary, to be thereafter executed, or, in case such writing is not executed, to his heirs. Then, by the supplementary instrument of October 15th, specific distribution of such residue after the death of the grantor, among various relatives, most of whom are named, was directed. Of course the two instruments of October 10th and 15th are to be considered together, and as one instrument; and, notwithstanding the able argument of the learned counsel for the defendants, I am clearly of the opinion that a valid trust was declared in these instruments under the fifth subdivision of the statute of this state. That subdivision, it will be observed, authorizes the creation of an express trust for the beneficial interests of *any person or persons.* Surely there was here expressly declared an active trust for the beneficial interest of the grantor during his life, and of other persons after his death. Apt and proper terms are used in the conveyance to pass the title. Undoubtedly it was the intention of the grantor to convey the title, for he says that from the infirmities of advanced age he deems it best to make the conveyance, and words ample to convey the fee and to divest the grantor of his title are used in the granting clause.

There was a trust to receive the rents and profits and apply them to the use of the grantor, because from an authority to rent must be implied an authority to receive the rents. There was a power to sell and to apply and distribute the estate. The trusts were active, and for the beneficial interests of designated persons. For certain purposes they survived the death of the grantor, and were, I think, of a nature embraced within the Wisconsin statute, the language of which is so broad as to remove the difficulties arising under the New York statute, and to make such discussion as was involved in the New York cases unnecessary. But it is contended that the trust attempted to be created by this conveyance is not fully expressed and clearly defined upon the face of the instrument. Undoubtedly the trusts are sufficiently

expressed and defined so far as they relate to Fellows, the grantor. This was not questioned on the argument. After the decease of Fellows it was provided that his debts and the expenses of the trust should be paid, and then that the residue should be distributed as directed in a supplementary instrument to be executed. By that instrument the grantor directed—*First*, the payment of certain life annuities to sisters, brothers, nephews, nieces, and other relatives, all of whom are named; *secondly*, that Heermans "convey to the children of my niece Phebe Wynkoop surviving me, with a life estate to the said Phebe Wynkoop, the farm on which she now resides," etc.; *thirdly*, that conveyance be made to Nile F. Wynkoop of a certain other farm, and that his brother Sylvanus Fellows and wife, or their survivor, shall have the use of certain property described; *fourthly*, that the residue of the avails of his estate shall be divided equally among his nephews and nieces, all of whom are named; and as part of this residuary clause it is provided that "the shares of such of the aforesaid residuary shareholders as shall have died prior to my death shall be distributed to their children, respectively, according to law; or in case that they, or any of them, have no child or children surviving me, then such share or shares shall be extinguished and ignored in the distribution."

As before stated, the two instruments of October 10th and 15th must be treated as one instrument, in arriving at the entire trust which they create. As to all the beneficiaries named in the supplementary instrument, there can be no doubt that the trust is sufficiently expressed and defined. But it is claimed that the persons who are to take under the second clause of the instrument, and those who are to receive property under the residuary clause in case any of the persons named therein die before the decease of the grantor, should have been designated by name, and that this omission leaves the trust so far unexpressed and undefined as to invalidate the instrument as a conveyance in trust. I am unable to concur in that view. Most of the ultimate recipients of

the property are named, and the proportions they are to receive are stated. The trusts are all clearly defined. In the two instances in which it is provided that distribution shall be made among the children of certain persons, there is designation of a class of beneficiaries. The grantor in such a case could not know when the trust is created, who of the class whom he desired to share in his property might be living at his death, or the names of such persons, or whether there would be children of some other beneficiary named surviving him; and I do not think it is the meaning or intention of the statute that the failure to name in every instance the person whom he might desire in certain contingencies to ultimately share in his estate—the class in which such person would belong being specifically designated—should be held to defeat the conveyance as a valid trust instrument, on the ground that it does not fully express and clearly define the trust; and, on the whole, I am of the opinion that by the instruments in question an active trust, valid under the statute, was created, and that the plaintiff was made the trustee of an express trust, clothed with the legal title to the premises in controversy.

The remaining question is, have the defendants established a paramount title? The proofs show that Levi J. Merrick never acquired a title by conveyance from Fellows. He held a bond for a deed, and entered into possession thereunder. It is also proven that he cut timber on the premises, and, by personal acts of occupancy and use, and by various lettings of portions of the land to other persons, he maintained the possession of an ostensible owner for a long series of years. In May, 1857, he received from Worthington a deed of the entire tract, but the evidence does not show that Worthington ever had any title. Merrick undertook to sell certain parcels of the land to third parties, but the contracts were never consummated because he could not convey a clear title. It will be noticed, also, that the deed from Worthington was made long before the instalments of purchase money were due under the contract of purchase from Fellows. There is no proof that Merrick ever paid any portion of that purchase

money. On the contrary, the testimony tends to affirmatively show that he paid nothing, and that efforts made in 1864 to obtain payment were unavailing. For many years, with two or three exceptions, the lands were sold for unpaid taxes, and Fellows, by his agent, redeemed them from the tax sales. It is nevertheless true, and this was hardly disputed on the trial, that Merrick steadily exercised acts of possession, and dealt with the land as the claimant of the title. One of the plaintiff's witnesses—McConnell—testifies, however, that in 1865 Merrick told him he went into possession by virtue of the contract with Fellows made in 1857, and that he had cut timber, cleared a part of the land, and rented a part. He testifies, also, that Merrick admitted to him that he had paid nothing on the contract, and had not kept the taxes paid; that Merrick offered to relinquish all claim for $500, and thought himself entitled to that sum for clearing a part of the land. The proof also shows that at the same time McConnell, as the agent of Fellows, redeemed the lands from various tax sales.

This testimony was objected to on the ground that Merrick is dead, and that evidence of conversations between him and Fellows' agent is inadmissible under the Wisconsin statute. Sections 4069, 4070, Rev. St. Wis. But it is clear, I think, that the objection is not sustained by the language or the meaning of the statute. Now, the statute of this state, in relation to adverse possession, provides that "where the occupant, or those under whom he claims, entered into the possession of any premises under claim of title, *exclusive of any other right*, founding such claim upon some written instrument as being a conveyance of the premises in question,* * * * and there has been a continual occupation and possession of the premises included in such instrument * * * under such claim for 10 years, the premises so included shall be deemed to have been held adversely, * * *" and such adverse possession is declared a bar to an action for the recovery of such real estate or the possession thereof. Further, the statute provides that "when there has been an

actual, continued occupation of any premises under a claim of title, *exclusive of any other right,* but not founded upon any written instrument, * * * the premises so actually occupied * * * shall be deemed to be held adversely," and such an adverse possession, continuing for 20 years, shall bar an action for the recovery of the estate.

Under these statutes it is clear that the possession claimed to be adverse must be under a claim of title which is antagonistic to the former owner's title. It must be such as involves the absolute repudiation of the original title, and it must be a claim of title, whether founded upon a written instrument or not, *exclusive of any other right.* Now, there are a few leading principles of law applicable to the present case which must not be overlooked. Evidence of adverse possession is always to be construed strictly, and every presumption is to be made in favor of the true owner. Such possession is not to be made out by inference, but by clear and positive proof. *Sydnor* v. *Palmer,* 29 Wis. 251–2, and cases cited.

"To constitute a valid and effectual adverse possession, the possession must be hostile in its inception. * * * No possession can be adverse, except the person in possession holds for himself, to the exclusion of all others, and under a claim of title which is entirely antagonistic to that of the true owner. The claim of title must be *adverse* to that of the claimant, *and not in any manner* subservient to the title of the latter." Tyler on Ejectment, 874. "Where it commences under acknowledgment of the right owner's estate, the possession will retain its original quality through any succession of occupants of the land, and will be presumed to be in subservience to the rightful interest." Id. 860.

The character of one's possession of land is determined by that of his entry, unless he has given the party holding the title under which he entered, notice of his intention not to hold under that title, or unless there has been a legal eviction, and possession taken or continued under a paramount title. *Quinn* v. *Quinn,* 27 Wis. 168. One who enters under a contract of purchase is estopped from denying the title of his vendor so long as he retains possession under the contract. *Miller* v. *Larson,* 17 Wis. 644; *Quinn* v. *Quinn, supra; Jackson ex dem.* v. *Walker,* 7 Cowen, 637. A party in possession of lands, recognizing the title of a claimant, and agreeing to

purchase, may subsequently deny such title, set up title in himself, and show that his acknowledgment was produced by imposition or made under a misapprehension of his rights; but a party *entering into* possession under an agreement to purchase, cannot dispute the title of him under whom he enters until after a surrender of the possession. *Jackson ex dem.* v. *Spear*, 7 Wend. 401.

Now, it cannot be claimed that Merrick's possession was hostile in its inception. It began in subservience to the interest and title of Fellows. Such having been its character at the time of his entry, Merrick's possession thereafter retained its original quality, because there never was a legal eviction of Fellows under a paramount title, nor was notice given to him of Merrick's intention to hold under such a title, nor was there ever a surrender of the possession which flowed from the original entry. There was not an entry into possession by Merrick under the present claim of title, *exclusive of any other right*, which the statute makes essential whether the possession be of 20 years under a claim not founded upon a written instrument, or of 10 years under a claim founded upon such an instrument. And, under the authorities, the case seems clearly one, especially in the light of all the testimony, in which the defendants are estopped to deny the title of Fellows and to assert paramount title by adverse possession. The alleged possession under the Worthington deed began after the contract with Fellows was made, and after the entry under that contract, and, as has been shown, the testimony discloses acts and admissions by Merrick which point to the conclusion that he held under his contract. Further, it is shown that in 1875 Merrick took proceedings under the statute of this state to acquire a tax deed of the premises, and in the affidavit which the statute required him to make, and which is part of the proceedings, he swore that the owner of the land was a non-resident of the county of Milwaukee. It was argued by defendant's counsel that by this allusion to the owner he meant himself; but that is quite inconsistent with the nature and reason of the transac-

tion. The witness McGregor testifies that when, as the at-torney of Fellows, he called on Merrick in 1864 to·effect a settlement, Merrick excused himself from payment on the ground that he had not received a deed of the land as prom-ised, and had in consequence sustained injury. Indeed, the circumstances tend strongly to show an estoppel resulting from express admissions and positive acts made and done in recognition of Fellows' title. It is true that a long time has elapsed since Merrick's possession began, but that cannot help the defendant's case unless it was a possession upon which a valid claim of title could be founded within the prin-ciples of law already adverted to. Particular attention was called to the release of this land from the lien of a judgment against Worthington, executed by the bank of Milwaukee, and in evidence. This, it may be admitted, is a circumstance tending to show that it was at least supposed at the time that Worthington held the title. But there is no proof that he did in fact have the title, and it is a noticeable feature of the proceeding that the bank judgment was recovered within six months after Merrick took a bond for a deed from Fel-lows, and before even the first instalment of the purchase money was due, and after Worthington had undertaken to convey to Merrick.

A pencil memorandum, made, I think, by Fellows, is in evidence, and is to the effect that Worthington sold the land to Merrick, but under objection, on the part of Fellows, to giving title until $1,000 was paid; that Worthington gave a writing of some sort, and then, to make it safe, he was to take the title, and himself give personal security, and Mer-rick's note in addition; that, because Merrick would not give real estate security, he (Fellows) thought it best to take Worthington's mortgage and Merrick's note; and then, he says, the papers were nearly a year at Milwaukee for that purpose. The memorandum is not sufficiently full to quite explain itself, but to the extent that it is self-explanatory it indicates that the arrangement it speaks of was never carried out, and at all events it is insufficient to satisfy the mind

that the title to the land was conveyed by Fellows to Worthington.

I have examined the cases cited by defendants' counsel, and do not find that they are in conflict with the principles before stated and that seem to be controlling here. One of them (*Griswold* v. *Butler*, 3 Conn. 227) holds, what would hardly be disputed, that where a person takes possession under a parol agreement for a purchase, and *pays for the land*, or purchases it and takes a deed which is defective, the possession of the purchaser which ensues is *prima facie* under a claim of title in himself, and is therefore adverse. That is not this case; because Merrick neither took a deed from the true owner nor paid for the land.

Without further discussion of the questions involved, I am of the opinion that the title to the lands in suit should be adjudged to be in the plaintiff, and that he is entitled to recover possession.