STEPHENS *v.* JOHNSON.

[66 South. 973.]

ADVERSE POSSESSION. *Acquisition of title.*
  Where a purchaser of land, at a foreclosure sale under a deed of
    trust, bought the land for the benefit of the debtor, she agreeing
    to repay him the money expended in such purchase, the legal
  108 Miss. 30

title was held by him simply to secure this debt due him by the debtor under the deed of trust, and where no time was fixed for the payment of this debt, it became due and payable either as soon as contracted or within a reasonable time thereafter. In such case where the debtor remained in possession of the land for twenty-eight years claiming it as her own, her possession became adverse to the purchaser, when his debt became barred by limitation and she became the owner of the land and entitled to have the deed to the purchaser cancelled.

APPEAL from the chancery court of Attalla county. Hon. J. F. McCool, Chancellor.

Suit by Mrs. S. J. Stephens against W. W. Johnson. From a decree for defendant, complainant appeals.

This suit was begun in equity by the appellant; the purpose being to cancel a deed to appellee as a cloud upon her title. The bill alleges that prior to 1881 she and her husband were the owners of the land in question, and during that year they executed a deed of trust conveying same to a trustee to secure an indebtedness; that in 1884, default having been made in the payment of the indebtedness, the trustee foreclosed the deed of trust, and appelle became the purchaser. She averred that she has, since that date, continued in open, notorious, and adverse possession of the premises and occupied it as her home for twenty-eight years, during which time she resided there in peaceful and quite possession with the full knowledge of the appellee, who had never taken possession, either actual or constructive, or attempted to disturb her in her peaceful possession thereof; and that, by reason of her continued occupancy of the premises for a period of more than ten years, her title became perfected by adverse possession; and that any claim that appellee might have to same has long since been barred by the statute of limitations.

Appellee answered, denying the allegations of the bill, and alleging that, at the time the property was offered for sale by the trustee, appellant approached him and re-

quested him to pay off the indebtedness and save her home; and that, in pursuance of this request, he and appellant had a parol agreement whereby appellee was to pay off the existing indebtedness and buy in the land and take a legal title thereto, and hold it until appellant could pay him the amount he had paid on the property, when appellee would convey the property to appellant; and that, in accordance with said agreement, he had permitted appellant to occupy the land without disturbing her; and that her occupancy of the land was only by his permission; and that he did not know that she claimed the land as her own until a few weeks before the filing of this suit, which was in 1912, when appellant's son requested him to deed the land to his mother, which he agreed to do upon the payment of the amount expended in the purchase thereof at the foreclosure sale, which appellant refused to do, and he refused then to execute a deed to her.

The lower court entered a decree declaring the appellee the owner of the property; and an appeal was taken.

*R. H. & J. H. Thompson,* for appellant.

We ask a reversal on the bill, answer and decree for two reasons: First, the affirmative relief granted the defendant was unauthorized; and, second, according to the averments of the answer itself, the defendant, Johnson, was but a mortgagee and, if entitled to a decree on proper pleadings the court should have ascertained the amount of his mortgage debt and given the complainant a right to redeem therefrom, or, if mistaken in this, the answer shows an executory contract of sale by Johnson and he has never taken the preliminary steps necessary to entitle him to possession of the lands.

That affirmative relief cannot be granted a defendant, in the absence of a cross-bill praying such relief, is as well established as any principle of equity pleading and

practice. To grant such relief on a mere answer is to condemn the complainant to the full extent to which affirmative relief is granted against him without his having sued; and to award the defendant relief for which he has not asked and for which he has not sued.

"It is settled doctrine of equity, that a defendant cannot pray anything in his answer except to be dismissed from the court. If he has any relief to pray, or discovery to seek, he must do so by a bill of his own, which is called a cross-bill, Lube's Eq. Pl., 39." *Millsaps* v. *Pfeifer*, 44 Miss. 805. 5 Ency. Pl. & Pr., 632, and Notes; 16 Cyc. 324.

Even if a defendant files a cross-bill, a failure to take out process thereon, or give notice the equivalent of process, is an abandonment of it. *Thomason* v. *Neely*, 50 Miss. 310.

According to the answer, Johnson, defendant and appellee, was a mere mortgagee; he held the title to the land only as a security for a debt and was under obligation to convey the lands to Mrs. Johnson, complainant and appellant, and her husband upon payment by them of the debt with reasonable interest. If there be any mistake in this, then the facts charged in the answer, surely establish an executory contract of sale by which defendant obligated himself to sell the lands to complainant and her husband upon payment of the sum of money; and in either case the decree appealed from is fatally erroneous.

In equity the holder of the legal title to land, coupled with an obligation to convey it to another upon the payment by that other to him of a sum of money, is simply a creditor of the party who has the right to pay the debt and demand a conveyance of the land, and his legal title is a mere security for his debt. The answer states that defendant bought the land under a trust agreement, its language being, "And he charges that it was a trust agreement for him to hold' and own it (the land) until the

complainant would pay back to him all that he paid at said sale, together with a reasonable interest." Does not a mortgagee hold and own the land mortgaged until the mortgagor pays the mortgage debt? It may be that a mortgagee after condition broken, is entitled as against the mortgagor to the possession of the land, but this will not warrant the decree appealed from, because possession was awarded without being sued for, and defendant's pretended debt was barred by limitation, complainant was neither called upon nor given opportunity to plead the bar, nor make any other defense to the pretended debt.

The transaction, the purchase of the lands by Johnson under the facts and the trust agreement shown in the answer surely, was either a mortgage or it was an executory contract for the sale of the lands. If the latter, on defendant's theory of the case, Mrs. Stephens' possession of the lands was rightful and she held under the executory contract of sale, and the decree appealed from is erroneous and should be reversed, because defendant, Johnson, did not take the steps necessary to entitle him to remove the woman from the lands. *Moak* v. *Bryant,* 51 Miss. 560; *Bolton* v. *Roebuck,* 77 Miss. 710.

It makes no difference whether the "trust agreement" was originally verbal or written; the statute of frauds cuts no figure in the case. The authorities generally hold that the writing, to take a case out of the statute, does not have to be made contemporaneously with the agreement; it is good although afterwards made. *Ide* v. *Shanton,* 15 Vt. 685, Am. Dec. 698; *Bird* v. *Monroe,* 66 Me. 337, 22 Am. Rep. 571; *Sheehy* v. *Fulton,* 38 Neb. 691, 41 Am. St. Rep. 717.

The final decree in this case from which we have appealed could not have been properly granted, even if defendant's pleadings otherwise warranted it, since neither complainant's husband, in whom the paper legal title vested, nor his heirs, were parties to the suit. *Wright* v. *Frank,* 61 Miss. 32.

The decree appealed from should be reversed because it is clearly erroneous in the facts.

*L. Brame,* for appellee.

It is said that inasmuch as no time was fixed for performance of the contract, the debt became due within a reasonable time. Authorities are cited in support of the general doctrine on this subject, and these we do not question. But counsel assume that there was a valid contract and hence that appellee owed a debt.

Under the doctrine of *Mazza* v. *Yerger,* we, have attempted to show that there was never any legal obligation that could be enforced by either party, and hence that there was no debt to become due within a reasonable or at any time.

If there had been a valid contract and appellee had promised to pay "when able" or "when convenient," then perhaps the doctrine relied upon in the cases cited by counsel would be applicable. But, an all-sufficient answer is that there was no valid enforcible agreement. Because of the statute of frauds, there was no contract; and it was never contemplated by the parties that there should be a contract. Johnson was the owner of the lands and appellee became a tenant at sufferance, under a verbal agreement to hold the land and work it out if appellee should ever become able to do so.

As the holding was under this agreement, it would never become adverse until there was a repudiation of the arrangement and notice of the same brought home to appellee. When he spoke to her about the property she said she was still unable to pay or do anything, and this left matters precisely as they were at the outset, the day the arrangements were made. He withdrew and things went on just as before. Under these facts, the statute of limitations could never begin to run, because there was never any holding under an adverse or hostile

claim of title. In short, there was never any adverse possession.

We deny the correctness of the legal propositions asserted by the counsel that appellee acquired "an interest in the land measured by dollars and cents," and that the sum due him could have been sued upon.

What valid obligation was there for the payment of money upon which he could have brought suit at any time? There was none whatever.

Johnson did not have a lien upon or an interest in the land. He owned it absolutely and could have put appellant off at any time. She held possession only permissibly and in recognition of his title. Until there was a repudiation of this, the nature of her holding could never be changed into an adverse possession.

It is said that if Johnson bought the land in trust he must do equity by allowing a redemption. In answer to this we say: First, we deny that he bought the land in trust, because under the *Yerger case* the supposed trust was absolutely void; second, in the next place there was nothing in the pleadings authorizing redemption by appellant. She did ask to redeem and did not offer or agree to pay anything. She asked absolutely to have our title cancelled, and clearly she was not entitled to that. If she was under any view of the facts, entitled to redemption, as she was not entitled to cancellation, she cannot on appeal get relief by redemption, because she does not ask for it.

But on the facts she is no more entitled to redemption than to cancellation. All she can do, and as little as she could do, is to give up possession of the land without having to pay a dollar's rent for all these years she has enjoyed it.

We no not care to answer the suggestion that signing the answer by appellee was a compliance with the statute of frauds. If this could have any such effect, the

statute of limitations could only begin to run from the date of signing and filing the answer.

If it will contribute to counsel's peace of mind, we here now consent that the court may decide the metaphysical question suggested by them, the decision being based on our solemn admission that we have no horror of the statute of limitations. We are enamoured both of that statute and the statute of frauds. They are both based on the soundest public policy. But one applies to this case and the other does not.

SMITH, C. J., delivered the opinion of the court.

Accepting appellee's version of this matter as true, it appears that he purchased the land at the trustee's sale at the request and for the benefit of appellant and her husband; they agreeing to repay him the amount of money expended by him in the purchase thereof. The legal title was held by him simply to secure the payment of this debt due him by appellant and her husband. No time was fixed for the payment of this debt, and it therefore became due and payable either as soon as contracted or within a reasonable time thereafter. It is immaterial which, for in either event it was barred by the statute of limitations long prior to ten years before the institution of this suit in the court below. Appellant was in possession of the land, claiming it as her own, and her possession became adverse to appellee when his debt became barred by limitations. *Moring* v. *Ables,* 62 Miss. 263, 52 Am. Rep. 186.

The judgment of the court below is therefore reversed, and a decree will be entered here adjudging appellant to be the owner of the land and cancelling appellee's claim thereto.

*Reversed.*